**Bryan Blaney, Esq.**
**NORRIS, McLAUGHLIN & MARCUS**
A Professional Corporation
875 Third Avenue, 18th Floor
New York, New York 10022
(212) 808-0700
Attorneys for Defendant Whitney E. Houston

**DOCUMENT FILED ELECTRONICALLY**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **BARBARA HOUSTON,** | Civil Case No. 2:08-CV-5530 |
| **Plaintiff,** | <u>**ANSWER TO AMENDED**</u> <u>**COMPLAINT**</u> |
| -vs- | |
| **WHITNEY HOUSTON** | |
| **Defendant.** | |

The Defendant, Whitney E. Houston, by her attorneys, Norris, McLaughlin & Marcus, PA, for her Answer to Plaintiff's Complaint, states as follows:

<u>**JURISDICTION**</u>

1.      Defendant accepts the factual assertion made in Paragraph 1 as true.

2.      Defendant accepts the factual assertion made in Paragraph 2 as true.

<u>**PARTIES**</u>

3.      Defendant admits that Plaintiff, BARBARA HOUSTON was married to JOHN R. HOUSTON, that he is deceased and that Plaintiff was married to him at the time of his death. Defendant, however, denies the assertion that Plaintiff is the owner of the property that is the subject of her complaint, and that said property was passed to her -- clear of encumbrances -- by JOHN R. HOUSTON'S Last Will and Testament.

4.      Defendant accepts the factual assertions made in Paragraph 4 as true except for the referencing to the mortgage amount which was $723,800.

## PLAINTIFF'S CLAIM FOR RELIEF

5.      Defendant accepts the factual assertions made in Paragraph 5 as true.

6.      Defendant accepts the factual assertions made in Paragraph 6 as true.

7.      Defendant accepts the factual assertions made in Paragraph 7 as true.

8.      Defendant denies the factual assertions made in Paragraph 8.

9.      Defendant denies the factual assertions made in Paragraph 9

10.     Defendant accepts the factual assertions made in Paragraph 10 as true.

11.     Defendant denies the factual assertions made in Paragraph 11 as true.

12.     Defendant denies the factual assertions made in Paragraph 12.

13.     Defendant denies the factual assertions made in Paragraph 13 except for the assertion that Defendant purchased and paid the premium for the life insurance policy – which is true.

14.     Defendant denies the factual assertions made in Paragraph 14.

15.     Defendant denies the factual assertions made in Paragraph 15.

16.     Defendant denies the factual assertions made in Paragraph 16.

17.     Defendant denies the factual assertions made in Paragraph 17.

18.     Defendant denies the factual assertions made in Paragraph 18.

19.     Defendant denies the factual assertions made in Paragraph 19.

20.     Defendant denies the factual assertions made in Paragraph 20.

21.     Defendant denies the factual assertions made in Paragraph 21.

22.     Defendant denies the factual assertions made in Paragraph 22.

23.   Defendant denies the factual assertions made in Paragraph 23.

24.   Defendant denies the factual assertions made in Paragraph 24.

25.   Defendant denies the factual assertions made in Paragraph 25.

26.   Defendant denies the factual assertions made in Paragraph 26.

27.   Defendant denies the factual assertions made in Paragraph 27.

28.   Defendant denies the factual assertions made in Paragraph 28.

29.   Defendant denies the factual assertions made in Paragraph 29.

FIRST CAUSE OF ACTION – DISCHARGE OF MORTGAGE

30.   Except as otherwise noted above, Defendant denies the allegations contained in Paragraph 30 of Plaintiff's Complaint.

31.   Defendant denies the allegations contained in Paragraph 31 of Plaintiff's Complaint.

32.   Defendant denies the allegations contained in Paragraph 32 of Plaintiff's Complaint.

33.   Defendant denies the allegations contained in Paragraph 33 of Plaintiff's Complaint.

34.   Defendant denies the allegations contained in Paragraph 34 of Plaintiff's Complaint.

SECOND CAUSE OF ACTION – UNJUST ENRICHMENT

35.   Except as otherwise noted above, Defendant denies the allegations contained in Paragraph 35 of Plaintiff's Complaint.

36.   Defendant denies the allegations contained in Paragraph 36 of Plaintiff's Complaint.

37.   Defendant denies the allegations contained in Paragraph 37 of Plaintiff's Complaint.

38.   Defendant denies the allegations contained in Paragraph 38 of Plaintiff's Complaint.

3

<u>THIRD CAUSE OF ACTION – EQUITABLE ESTOPPEL</u>

39.     Except as otherwise noted above, Defendant denies the allegations contained in Paragraph 39 of Plaintiff's Complaint.

40.     Defendant denies the allegations contained in Paragraph 40 of Plaintiff's Complaint.

41.     Defendant denies the allegations contained in Paragraph 41 of Plaintiff's Complaint.

42.     Defendant denies the allegations contained in Paragraph 42 of Plaintiff's Complaint.

43.     Defendant denies the allegations contained in Paragraph 43 of Plaintiff's Complaint.

44.     Defendant denies the allegations contained in Paragraph 44 of Plaintiff's Complaint.

**WHEREFORE,** Defendant demands dismissal of the complaint together with such other and further relief as this Court deems just and proper.

<u>**AFFIRMATIVE DEFENSES**</u>

Defendant states the following affirmative defenses in response to Plaintiff's Complaint:

<u>**FIRST AFFIRMATIVE DEFENSE—Statute of Frauds**</u>

Plaintiff's claims for discharge of the mortgage, unjust enrichment and equitable estoppel are predicated on the existence of an agreement between the defendant and her late father, which did not exist, and for which there is not and was never a written and signed statement; nor an oral agreement subsequently confirmed by reference in correspondence, memoranda or other written statement made by the defendant, or provided to her which stated the essential terms alleged by the complaint and to which she assented.  For those reasons, the claims in the instant complaint are barred by the Statute of Frauds.

## SECOND AFFIRMATIVE DEFENSE – Parol Evidence Rule

Plaintiff's claims for discharge of the mortgage, unjust enrichment and equitable estoppel are predicated on the existence of an agreement between the defendant and her late father, which did not exist, and for which there is not and was never an agreement neither written nor oral, neither signed nor otherwise accepted, and neither negotiated nor agreed to by the defendant, that stated the terms and conditions alleged by the complaint.  Plaintiff's assertion that an oral agreement existed between the defendant and John R Houston which "completed" an alleged incomplete and unsigned agreement necessarily fails because such evidence – dependant upon allegations that such statements were made to plaintiff by John Houston – is inadmissible as precluded by the Parole Evidence Rule.

## THIRD AFFIRMATIVE DEFENSE – Laches

Plaintiff's claims for discharge of mortgage, unjust enrichment and equitable estoppel also fail on the basis of Laches because the plaintiff unreasonably delayed assertion of those claims for four years, during which time she was certainly aware of them, and because of that delay unfairly prejudiced the defendant's ability to defend against them.

## FOURTH AFFIRMATIVE DEFENSE – Absence of Consideration

Plaintiff's claims of discharge of the mortgage, unjust enrichment and equitable estoppel are predicated on the existence of an agreement between the defendant and her late father which did not exist, but even if it had existed, the unsigned document upon which the assertion is based could not sustain the claim asserted because that document would have been unenforceable as a contract because of its absence of the mutual exchange of consideration.

## FIFTH AFFIRMATIVE DEFENSE – Failure To State A Claim

Plaintiff's claims of discharge of the mortgage, unjust enrichment and equitable estoppel are predicated on the existence of an agreement between the defendant and her late father which did not exist.  For that reason, plaintiff's claims fail to state a basis on which remedy can be obtained because there was no enforceable contract between the defendant and her late father for which she breached any obligations and from which Plaintiff can claim remedy.

## SIXTH AFFIRMATIVE DEFENSE -- Estoppel

Plaintiff's claims of discharge of the mortgage, unjust enrichment and equitable estoppel are also barred on the grounds of Estoppel because neither she nor John Houston fulfilled the obligations under the mortgage – namely to make all monthly due and owing payments to the defendant from the date that the mortgage was executed up to the time of John Houston's death.

## SEVENTH AFFIRMATIVE DEFENSE --- Equitable Estoppel

Plaintiff's claims breach of contract, unjust enrichment and conversion are also barred on the grounds of Equitable Estoppel, because defendant paid for the property, paid also for its upkeep and care, paid living and health care expenses for John Houston and allowed Plaintiff and John Houston to reside there without making mortgage and/or other payments, and subsequent to John Houston's death, has allowed Plaintiff to live there for four years also without making mortgage and/or other payments.

## PRAYER FOR RELIEF

**WHEREFORE**, Defendant respectfully demands that this Court:

(1)    Dismiss the Complaint, and all claims and petitions for relief sought therein with prejudice;

(2)    Grant the defendant reasonable attorneys' fees and costs for this action; and

6

(3)     Grant the defendant all such other remedy and relief, both legal and equitable, to which it is entitled.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Defendant also hereby demands a trial by jury on all issues so triable.

## COUNTER-CLAIMS

Whitney E. Houston, ("Counter-claim Plaintiff"), an individual by way of counter-claim against Barbara Houston, ("Counter-claim Defendant"), alleges as follows:

## JURISDICTION/VENUE

1.      Jurisdiction and Venue for these counterclaims exist on the same bases as asserted for the claims asserted by the Amended Complaint and stated in paragraphs 1 and 2 of the Amended Complaint, and admitted by Counter-claim plaintiff in paragraphs 1 and 2 above.  Those paragraphs are referenced and alleged herein as if stated fully.

## FACTUAL BACKGROUND

2.      John R. Houston, Jr. was Counter-claim Plaintiff Whitney Houston's birth father. During his lifetime, the two shared a close relationship that was characterized by mutual respect, honesty and concern for each other's well being.

3.      Because of her love for and interest in the well being of her father, Counter-claim Plaintiff Whitney Houston provided substantial financial assistance to him throughout his lifetime

4.      Counter-claim Defendant Barbara Houston, on information and belief was previously employed as a home and professional office custodial care services worker.

7

5.     On information and belief, Counter-claim Defendant Barbara Houston is a contemporary in age to Counter-claim Plaintiff, Whitney Houston, and met and began a romantic relationship with John Houston, in or about 1987.  Also on information and belief, at the time that their relationship began, John Houston was approximately sixty-seven years of age, and Counter-claim Defendant Barbara Houston was approximately twenty-seven years of age.

6.     Also in or about 1987, when Counter-claim Defendant Barbara Houston and John Houston met and began their romantic relationship, Counter-claim Defendant Barbara Houston was a single parent of one child, and supported herself and her child by cleaning homes and professional offices in and near Newark, New Jersey.  Upon information and belief, prior to the start of their romantic relationship, Counter-claim Defendant Barbara Houston had been hired by John Houston to perform cleaning services at his then Newark residence.

7.     Counter-claim Plaintiff, Whitney Houston is a well accomplished and successful recording artist and actress and has received substantial critical acclaim and numerous awards for her music recordings, movie roles, television appearances and live performances on national and international stages.  Specifically, and to date, she has been awarded fourteen Grammy Awards, twenty-one American Music Awards, six People's Choice Awards and two Emmy Awards.

8.     Because of her successful career, Counter-claim Plaintiff Whitney Houston has also achieved substantial celebrity status and financial earnings.

9.     In 1985, her debut solo album, titled "Whitney Houston," was released. Immediately following its release, the album's sales were tremendous, and continued for many months thereafter.  The album is still among the highest earning debut albums for a solo musical artist in the United States.  It contained seven separate songs that reached number one on the

*Billboard* magazine's ratings chart and won three Grammy awards, one of which was the award for "Album of the Year."

10.     Counter-claim Plaintiff Whitney Houston's second album, titled "Whitney" was released in 1987, and also received tremendous critical acclaim and great popular success.  That album also won three Grammy awards, one of which was "Album of the Year."

11.     Also in or about 1987, and soon after Counter-claim Defendant Barbara Houston and John Houston two began their romantic relationship, she stopped her work as a domestic services custodial care worker, and with her daughter, moved in with John Houston.

12.     During a period relevant to this complaint, namely from in or about 1987 until in or about 1997, John Houston received income, substantial personal financial assistance and other benefits from Counter-Claim Plaintiff Whitney Houston individually and from her business/management company, "Nippy Inc."

13.     During the entire period relevant to this complaint, namely from in or about 1987 until in or about 2003, John Houston received substantial personal financial assistance and other benefits from Counter-claim Plaintiff Whitney Houston individually, and from her business/management company, "Nippy Inc.".

14.     In or about December, 1990, John Houston served notice upon and filed a complaint for divorce from his then wife Cissy Houston, who is Counter-claim Plaintiff Whitney Houston's birth mother.

15.     In or about 1992, a judgment of divorce was entered that terminated the marriage between John Houston and Cissy Houston.

16.     Also, in or about 1992, John Houston married Counter-claim Defendant Barbara Houston.

17.     In or about 1989, John Houston entered into an agreement to purchase property identified as 200 Old Palisades Road, Unit No. 11E, Ft Lee, New Jersey, ("The Ft. Lee property"), for the purchase price amount of approximately Four Hundred Eighty-Five Thousand Dollars ($485,000.00).

18.     In order to accomplish the purchase of the Ft. Lee property, and also to pay for other costs, in or about 1989 John Houston also borrowed Five Hundred Fifty Thousand Dollars ($550,000.00) from his daughter, Counter-claim Plaintiff Whitney Houston.  To secure payment of that loan, John Houston and Counter-claim Plaintiff Whitney Houston signed and entered into a mortgage agreement in which John Houston agreed to terms by which he would repay the financial debt that he owed to Counter-claim Plaintiff Whitney Houston.

19.     In or about 1990, and in order to complete significant renovations and remodeling of the Ft. Lee Property, John Houston borrowed an additional amount of money, specifically an amount that totaled approximately Two Hundred Thirty-Six Thousand Dollars ($236,000.00), from his daughter Counter-claim Plaintiff Whitney Houston.  At that time, the entire principal amount of the first loan remained still outstanding.  John Houston and Counter-claim Plaintiff Whitney Houston agreed that the mortgage agreement for that first loan should be discharged and replaced by a new mortgage that combined the two loan amounts.  Accordingly, and to secure payment of the combined loans for purchase and renovation of the Ft. Lee property, in or about August 1990 John Houston and Counter-claim Plaintiff Whitney Houston entered into a mortgage agreement in the amount of Seven Hundred Twenty-Three Thousand, Eight Hundred Dollars ($723,800.00).  Through that agreement, John Houston agreed to specific terms and a schedule by which he would repay the financial debt that he owed to Counter-Claim plaintiff Whitney Houston (hereafter, "The Mortgage Loan Agreement.")

20.    The mortgage loan was a fifteen year note that provided for payment of 8% interest that accrued annually.  The terms provided that John Houston would pay Two Thousand, Five Hundred Dollars ($2,500.00) each month to Counter-claim Plaintiff Whitney Houston, and that of any/all unpaid annual interest amount would be paid in lump sum on the last calendar of the year.

21.    On information and belief, most – if not all – of the purchases and decisions regarding renovations and furnishing of the Fort Lee property that were paid for by money from the Mortgage Loan Agreement were made by Counter-claim Defendant Barbara Houston.

22.    During the time period from 1989, until 1997, that is. from the date that the initial loan was taken and until his retirement from work, John Houston made only partial payments on the loan's principal and interest amounts that were due and owing.  Specifically, during that period John Houston paid a total of only approximately Three Hundred Seventy Thousand Dollars ($370,000.00).  That amount was substantially less than the total interest and principal payments that were due.  Accordingly, in 1997 The Mortgage Loan Agreement was already in substantial default.

23.    After his retirement in 1997, on information and belief, John Houston did not make any further payments on the Mortgage Loan Agreement.  Notably, and also on information and belief, after 1997 Counter-claim Defendant Barbara Houston also did not make any payments on the mortgage, i.e., neither to the principal nor the interest payments that were due.

24.    From the time of John Houston's death in 2003, to and including the date of the instant complaint, Counter-claim-Defendant Barbara Houston has also not made any payments of either principal or interest on the mortgage debt, and has left the default in place without redress.

11

25.     Pursuant to the terms of the Mortgage Agreement, John Houston and Counter-claim Defendant, in her capacity as beneficiary of John Houston's estate, defaulted on the Mortgage Agreement with Counter-claim Plaintiff Whitney Houston in the amount of approximately One Million, Six Hundred Thousand Dollars ($1,600,000.00).

26.     During his lifetime, although the loan was in default, John Houston avoided foreclosure and eviction only because of the close personal relationship that he shared with his daughter, Counter-claim Plaintiff Whitney Houston.

27.     Subsequent to John Houston's death, and although the loan remained in default, (and unpaid principal and interest amounts continued to accumulate), Counter-claim Defendant Barbara Houston avoided foreclosure and eviction only because of Counter-claim Plaintiff Whitney Houston's mistaken understanding that Counter-claim Defendant Barbara Houston recognized that she was a guest at the Ft. Lee property, not an owner in fee simple, and was only the beneficiary of Counter-claim Plaintiff Whitney Houston's generosity.

28.     In addition to the loans that she provided to John Houston, Counter-claim Plaintiff Whitney Houston also paid John Houston a salary from in or about 1987 until in or about 1997.

29.     In addition to the salary that she paid to John Houston, during the entire time period from 1991 to 1997, Counter-claim Plaintiff Whitney Houston also made substantial payments for John Houston's living expenses, such as costs for household utilities and telephones, costs for property taxes and condo fees for the Ft. Lee Property, costs for charges placed on John Houston's credit cards, and costs for automobiles (purchases, leases, fuel and maintenance) that John Houston and Counter-claim Defendant Barbara Houston used during that period and longer.

30.   <u>John Houston's Salary</u>:  From approximately 1991 to and including 1997, John Houston received salary from Counter-claim Plaintiff Whitney Houston and/or Nippy Inc in amounts that ranged from approximately Fifty-Two Thousand Dollars ($52, 000.00) to approximately Ninety Thousand Dollars ($90,000.00) per year (which payments totaled approximately Five Hundred Thousand Dollars ($500,000.00).

31.   In or about 1997, John Houston retired and no longer received salary from Nippy Inc.  From approximately 1997 to his death in 2003, however, John Houston continued to receive substantial financial benefits from Counter-claim Plaintiff Whitney Houston.  Namely:

32.   <u>Property Tax Payments for the Fort Lee Property</u>: From approximately 1991 to and including 2003, Counter-claim Plaintiff Whitney Houston made payments of the real estate taxes for the Ft. Lee property (which payments totaled approximately One Hundred Eleven Thousand Dollars ($111,000.00) during the period from 1997 to 2003 and none of which payments were ever reimbursed by John Houston or Counter-claim Defendant Barbara Houston to Counter-claim Plaintiff Whitney Houston.);

33.   <u>Condo Dues Payments for the Ft. Lee Property</u>: From approximately 1997 to and including 2003, Counter-claim Plaintiff Whitney Houston made all of the payments for condo dues for the Ft. Lee property in amounts that were approximately Twelve Thousand Dollars ($12,000.00) each year (which payments totaled approximately Eighty Four Thousand Dollars ($84,000.00) during the period from in or about 1997 until in or about 2003 and none of which were never reimbursed by John Houston or Counter-claim Defendant Barbara Houston to Counter-claim Plaintiff Whitney Houston.).

34.   <u>Payments for Personal Charges on John Houston's Credit Cards</u>: From approximately 1997 to and including 2003, Counter-claim plaintiff Whitney Houston made

13

payments for charges on credit cards held by John Houston and which charges had been incurred by him and or Counter-claim Defendant Barbara Houston for various purposes including: vacation travel, restaurant dining; clothing, jewelry and personal use items (which payments totaled approximately Two Hundred Thousand Dollars ($200,000.00) and were never reimbursed by John Houston or Counter-claim Defendant Barbara Houston to Counter-claim Plaintiff Whitney Houston.).

35.     Payments Utilities and Home Care Maintenance Costs for the Ft. Lee Property: From approximately 1997 to and including 2003, Counter-claim Plaintiff Whitney Houston made payments for all of the bills for utilities, home care, repairs, periodicals used at the Ft. Lee Property and received by John Houston and Counter-claim Defendant Barbara Houston.  The utility bills included: bills for local and long distance telephones (both land line and cell phone); bills for heating, air conditioning, water, electricity and gas use and related utilities maintenance and repair costs.  The bills also included costs for cable television, newspapers, magazines and other periodical subscriptions.  Counter-claim Plaintiff Whitney Houston also paid for cleaning services for the Ft. Lee Property, and various other home care, use, maintenance and repair costs (which payments totaled approximately Two Hundred Thousand Dollars ($200,000.00) and were never reimbursed by John Houston or Counter-claim Defendant Barbara Houston to Counter-claim Plaintiff Whitney Houston).

36.     Automobile Purchases, Leases, Fuel and Maintenance Costs for Cars Used By John Houston and Counter-claim Defendant Barbara Houston:  From approximately 1991 to and including 2003, Counter-claim Plaintiff Whitney Houston made payments for all of the purchases, leases, auto fuel and services necessary to maintain the several vehicles used by and/or for John Houston and Counter-claim Defendant Barbara Houston (which payments

totaled approximately Two Hundred Thousand Dollars ($200,000.00) and were never reimbursed by John Houston or Counter-claim Defendant Barbara Houston to Counter-claim Plaintiff Whitney Houston).

37.     <u>Health Care Insurance Costs for John Houston and Counter-claim Plaintiff Barbara Houston</u>:  From approximately 1991 to and including 2003, Counter-claim Plaintiff Whitney Houston paid for all of the costs for health care insurance for John Houston and for Counter-claim Defendant Barbara Houston (which payments totaled approximately Two Hundred Thousand Dollars ($200,000.00) and were never reimbursed by John Houston or Counter-claim Defendant Barbara Houston to Counter-claim Plaintiff Whitney Houston).

38.     <u>The Life Insurance Policy for John Houston That Named Counter-Claim Defendant Barbara Houston as the Beneficiary</u>:  From Approximately 1992 to and including 2003, Counter-claim Plaintiff Whitney Houston and/or Nippy Inc also paid the premiums for life insurance policy for John Houston, issued by the Fort Dearborn Life Insurance Company, that named John Houston's then wife, Counter-claim Defendant Barbara Houston as its sole beneficiary (which payments totaled approximately Fifteen Thousand Dollars ($15,000.00) and were never reimbursed by John Houston or Counter-claim Defendant Barbara Houston to Counter-claim Plaintiff Whitney Houston).

39.     On February 2, 2003, and after prolonged illnesses that substantially limited his activities during the final several years of his life, John Houston died.

40.     Accordingly, and after some time thereafter, but also in or about 2003, the Fort Dearborn Life Insurance policy paid benefits for the total amount due to Counter-claim Defendant Barbara Houston.

41.     In or about 1991, and for the purpose of securing the recovery of money that she had already spent, and additional money that she anticipated spending on behalf of John Houston, but without reimbursement from him, Counter-claim Plaintiff Whitney Houston purchased a life insurance policy on John Houston's life that named her as the sole beneficiary without any contingencies.

42.     That policy, issued by the Manhattan Life Insurance Company, "The Manhattan Life Policy," was purchased in or about January 1991, had a face value benefit amount of One Million Dollars ($1,000,000.00), and stated annual premiums in the amount of Eighty Seven Thousand, One Hundred Seventy-Nine Dollars ($87,179.00). The actual policy was lost, but an official certification of it was issued by the insurance company on or about April 12, 1999.

43.     The 1999 Certification of the Manhattan Life policy did not reflect any change or alteration to the original policy issued in 1991. That Certification confirmed that the policy still named only Counter-claim Plaintiff Whitney Houston as the beneficiary of the policy – without any contingencies.

44.     In addition to the loans and other financial benefits that Counter-claim Plaintiff Whitney Houston paid to and on behalf of John Houston, she purchased the Manhattan Life Policy, and made all of the premium payments that were due on it without any reimbursement from either John Houston or Counter-claim Defendant Barbara Houston.

45.     There was never an agreement between John Houston and Counter-claim Plaintiff Whitney Houston that involved her forgiving that mortgage debt owed to her by John Houston, and "gifting" the Ft. Lee Property to Counter-claim Defendant Barbara Houston.

46.     There was also never an agreement between John Houston and Counter claim Plaintiff Whitney Houston that involved her replacing herself as beneficiary in favor of Counter-

16

claim Defendant Barbara Houston on the Manhattan Life Policy – whether for the purpose of eliminating the debt obligation from the Mortgage Agreement, or for any other purpose.

47.     Counter-claim Plaintiff Whitney Houston never signed, negotiated, agreed to nor even saw – prior to the start of this litigation -- the document alleged by Counter-claim Defendant as the agreement by which John Houston's Mortgage obligation would be satisfied by payments made under the Manhattan Life Policy.

48.     The document alleged by Counter-claim Defendant Barbara Houston as the agreement by which John Houston's Mortgage obligation would be satisfied by payments made under the Manhattan Life Policy and which purports on its face to have been drafted in 1991, is completely unsigned, makes no reference to any benefit or consideration that Counter-claim Plaintiff Whitney Houston would receive or had received in exchange for the benefit and consideration that she would have been providing.

49.     The 1997 Manhattan Life Certification of the Life Insurance policy that named Counter-claim Plaintiff Whitney Houston as the sole beneficiary makes no reference to any contingency that policy benefits would be paid to Counter-claim Defendant Barbara Houston.

50.     Some time after John Houston's death, but also in or about 2003, the life Insurance policy for John Houston that had been issued by the Manhattan Life Insurance Company paid benefits for the total amount due to Counter-claim Plaintiff, Whitney E. Houston, who was its only named beneficiary.

51.     The policy's proceeds ultimately did not recover all (or even most) of the living expenses and other financial benefits that Counter-claim Plaintiff Whitney Houston paid for John Houston and Counter-claim Defendant Barbara Houston during the final years of his life, and in fact may not have even paid for all of the costs for its purchase and annual premiums.

## FIRST COUNTER-CLAIM CAUSE OF ACTION:
## BREACH OF CONTRACT

52.     Counter-claim Plaintiff, Whitney Houston repeats and re-alleges each of the allegations set forth in ¶¶ 1-51 above as if set forth fully herein.

53.     At the time of his death in 2003, John Houston still owed nearly the entire amount of principal and all of the interest on the mortgage that he had entered with Counter-claim Plaintiff Whitney Houston in order to purchase and renovate the Ft. Lee Property.

54.     Because a substantial portion of that debt was never paid, the mortgage that secured it was never discharged.

55.     Counter-claim Defendant Barbara Houston inherited John Houston's estate at the time of his death pursuant to the terms of his Last Will and Testament.  Accordingly, she inherited his interests in the Ft. Lee Property.

56.     John Houston's interest in the Ft. Lee Property, however, was encumbered by the Mortgage that he had with Counter-claim Plaintiff, Whitney Houston which mortgage was never paid nor discharged.

57.     During John Houston's last years of life, although the Mortgage was in substantial arrears, Counter-claim Plaintiff Whitney Houston -- because of her personal relationship with him -- chose not to enter default and foreclose on the property.

58.     For some years following John Houston's death, although the Mortgage remained in default, Counter-claim Plaintiff Whitney Houston -- because of her recognition of the relationship that Counter-claim Defendant Barbara Houston shared with John Houston, and because she believed – until the instant complaint was threatened and then filed -- that Counter-claim Defendant Barbara Houston understood the true facts regarding her status at the Ft. Lee property: namely that she was not an owner free and clear of mortgage debt, but rather a guest at

that property on which there was a mortgage that was in default, and that she also recognized Counter-claim Plaintiff Whitney Houston's generosity in the decision not to enter default of the mortgage, and obtain foreclosure on the property notwithstanding her entitlement to do so..

59.     Because Counter-claim Defendant Barbara Houston has now announced her claim of unencumbered ownership of the Ft. Lee property, Counter-claim Plaintiff Whitney Houston must assert her actual lawful right of entitlement pursuant to mortgage and demand payment of the total unpaid, outstanding mortgage.

60.     Accordingly, and because neither the entire principal Mortgage amount, nor all of the interest amounts required by the terms of the mortgage agreement were ever paid by John Houston or by the named beneficiary of his Estate, Counter-claim Defendant Barbara Houston, Counter-claim Plaintiff Whitney was damaged in the amount of approximately One Million, Six Hundred Thousand Dollars, ($1,600,000.00), and seeks immediate recovery of that amount together with a payment of any and all additional interest and/or penalties for delinquent payment as provided by the Mortgage contract between John Houston and Whitney Houston.

### SECOND COUNTER-CLAIM CAUSE OF ACTION: UNJUST ENRICHMENT

61.     Counter-claim Plaintiff Whitney Houston repeats and re-alleges each of the allegations set forth above in ¶¶ 1-60 above as if set forth fully herein.

62.     Counter-claim Defendant Barbara Houston initially resided at the Ft. Lee property as a guest of John Houston.  Subsequently, she resided there as his spouse.

63.     Counter-claim Defendant Barbara Houston has never made any financial payments, or provided any contributions or benefits of any kind to Counter -claim Plaintiff Whitney Houston to off-set, diminish or satisfy the obligations owed under the mortgage.

64.     Counter-claim Defendant Barbara Houston obtained John Houston's interest in the Ft. Lee Property as beneficiary of his Last Will and Testament.

65.     Accordingly, and upon information and belief, Counter-claim Plaintiff Whitney Houston is entitled to damages in the amount of the current fair market value of the Ft. Lee Property, pursuant to her cause of action for unjust enrichment.


                          NORRIS, McLAUGHLIN & MARCUS
                          A Professional Corporation
                          Attorneys for Defendant, Whitney E. Houston


                          /s/ Bryan Blaney___
                          BRYAN BLANEY


Dated:  March 20, 2009