```
 1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
 2

 3   _____
     BARBARA HOUSTON,
 4                   PLAINTIFF

 5      Vs.                                 CIVIL NO.
                                            08-5530 (PGS)
 6   WHITNEY HOUSTON,
                     DEFENDANT
 7   _____

 8
                                OCTOBER 20, 2010
 9                              CLARKSON S. FISHER COURTHOUSE
                                402 EAST STATE STREET
10                              TRENTON, NEW JERSEY  08608

11

12
     B E F O R E:      THE HONORABLE PETER G. SHERIDAN
13                     U.S. DISTRICT COURT JUDGE
                       DISTRICT OF NEW JERSEY
14

15   A P P E A R A N C E S: (BY TELEPHONE)

16       GARCIA & KRICKO
         BY:  GILBERTO M. GARCIA, ESQUIRE
17       FOR THE PLAINTIFF

18       NORRIS, McLAUGHLIN & MARCUS
         BY:  BRYAN BLANEY, ESQUIRE
19       FOR THE DEFENDANT

20

21
     COURT'S OPINION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
22

23                         Certified as true and correct as required
                           by Title 28, U.S.C. Section 753
24                         /S/ Francis J. Gable
                           FRANCIS J. GABLE, C.S.R., R.M.R.
25                         OFFICIAL U.S. REPORTER
                           (856) 889-4761
```

*United States District Court*
*Trenton, New Jersey*

1          THE COURT:  Hello, this is Judge Sheridan.

2          MR. BLANEY:  Hi, Judge.  If I've done this correctly

3  and I hope I have, I have Mr. Garcia on conference as well.

4          MR. GARCIA:  Good afternoon, Judge.

5          THE COURT:  All right.  How was your flight, Mr.

6  Garcia, all right?

7          MR. GARCIA:  It was great.  It was great, thank you.

8          THE COURT:  Okay.  This is Houston versus Houston.

9  I think it would be best, Mr. Blaney, if you wish to put

10  appearances on the record, that would be good.

11          MR. BLANEY:  That's fine.

12          MR. GARCIA:  I'm Gil Garcia, Judge, appearing on

13  behalf of the plaintiff.

14          MR. BLANEY:  And Brian Blaney, of the law firm

15  Norris, McLaughlin and Marcus, together with Dan Acesto (ph)

16  on behalf of defendant Whitney Houston.

17          THE COURT:  All right, thank you.  So if you can't

18  hear me, just interrupt and tell me I have to talk louder.

19  And I'll do that.

20          This matter is before the Court on a motion for

21  summary judgment by Defendant Whitney Houston, who I'll call

22  Whitney throughout.  The Court has diversity jurisdiction over

23  the matter, 28 U.S.C. 1332(a)(1).  It's a family quarrel over

24  a residence located in Bergen County which I'll call the

25  residence; and payment of life insurance proceeds to satisfy a

1   debt owed under a note and mortgage.

2        The owner of the residence was John R. Houston, and

3   I will refer to him as either John or decedent; who died in

4   February 2003.  Prior to his death, John was an executive of

5   Nippy, Inc., and John's business relationship with Nippy ended

6   in 1997.

7        Nippy, Inc. is a corporation wholly owned by Whitney

8   and it manages Whitney's business affairs.  The plaintiff is

9   Barbara Houston; Barbara, who is a widow of John.  Upon his

10   death John bequeathed all of his assets to Barbara.  The

11   Defendant is Whitney.  She's a famous vocalist who is the

12   daughter of John.  Although Barbara and Whitney may be

13   considered stepmother and daughter, that relationship never

14   really jelled.

15        On August 23, 1990, Whitney loaned John $723,800 for

16   the purchase and renovation of the residence.  The loan was

17   secured by a mortgage on the residence.  The mortgage was

18   prepared by an attorney, James P. Cinque.  In that mortgage,

19   the decedent promised to pay Whitney $723,800 in monthly

20   payments of $3,000; plus interest of accrued interest on

21   December 31st of each year.  The payments were to end on July

22   31st, 2005.  The mortgage binds the decedent and "all who

23   succeed in his responsibilities (such as heirs and

24   executors)."

25        Within the mortgage John details the events of

1   default, and the events of default are as follows:  "The

2   lender may declare that I am in default on the note and

3   mortgage, if, A, I fail to make any payments required by the

4   note and this mortgage within 10 days of the due date; B, I

5   fail to keep any other promise I make in this mortgage; C, if

6   the ownership of the property is changed for any reason; D,

7   the holder of any lien on the property starts foreclosure

8   proceedings; or E, bankruptcy, insolvency or receivership

9   proceedings are started by or against any of the borrowers."

10          In addition, there's one other section added to the

11  mortgage form, which provides for acceleration of the amount

12  due upon the transfer of the premises.  And it's a quote:

13  "Lender -- that would be Whitney -- may require immediate

14  payment in full of all sums secured hereunder, if all or any

15  part of the property or of any right in the property is sold

16  or transferred without lender's prior written permission."

17          The mortgage also enumerates what remedies are

18  available to Whitney if default occurs.  The mortgage states,

19  and I quote, "Lender's rights upon default; if the lender

20  declares that the note and this mortgage are in default, the

21  lender will have all rights given by law or set forth in this

22  mortgage.  This includes the right to do any one or more of

23  the following; A, take possession and manage the property,

24  including the collection of rents and profits; B, have a court

25  appoint a receiver to accept rent for the property" -- and I

1 have a note here that it added at the end in parentheses:  (I

2 consent to this).

3         But it was hard to read that on the copy of the

4 mortgage.  So, I'll leave that to the parties to look at.

5         "C, start a court action known as foreclosure which

6 will result in the sale of the property to reduce my

7 obligation under the note and this mortgage; and D, sue me for

8 any money that I owe the lender."

9         As the note and mortgage were being negotiated,

10 there was a notion, for lack of a better term, that the

11 payment of the note and the mortgage should be insured in the

12 case of a death of John.

13         Dating as far back as June 27, 1990, an accountant,

14 Robert *Rider of the firm of Widenbaum, Rider and Company,

15 confirmed to Mr. List, the controller of Nippy, that pursuant

16 to their discussion, a life insurance policy covering John's

17 life naming Whitney as the beneficiary, would be obtained to

18 pay for the mortgage in the event John died.

19         In the letter Rider wrote to Mr. List:  "By copy of

20 this letter to Jim Cinque, I am recommending that he prepare a

21 note and mortgage from John R. Houston in favor of Whitney E.

22 Houston, in the amount of $723,800, covering Unit 11-E.  As

23 discussed with you on this telephone, the life insurance

24 should be finalized within the next 30 days.  It appears that

25 we will be able to get a $750,000 policy covering John's life

1  naming Whitney as beneficiary.  The proceeds of which will be

2  used to pay off the mortgage."

3         On January 17th, 1991, a life insurance policy on

4  John's life was acquired by Nippy, Inc.  The life insurance

5  policy was entered with Manhattan Life Insurance, and was

6  issued for one million dollars naming Nippy as the owner, John

7  as the insured, and designated Whitney as the beneficiary.

8  The yearly premiums were $87,179.

9         Mr. Rider indicated at depositions that the policy

10  was procured in order to, "protect Whitney and that she

11  receive her money that she advanced him" (referring to John).

12         On or about January 21st, 1991, Mr. Rider writes to

13  Jim Cinque, and advises him that the life insurance policy has

14  been obtained, and suggests that an agreement should be

15  prepared between John and Whitney, wherein Whitney would apply

16  the proceeds of the policy against any mortgage or unpaid

17  interest that is due at the time of death, and the balance, if

18  any, would pass on to John's estate.

19         The letter reads in part; "The life insurance has

20  finally been obtained on the life of John R. Houston in the

21  amount one million dollars, Whitney Houston is named as

22  primary beneficiary.  The owner of the policy is Nippy, Inc.

23  The insurance is with Manhattan Life Insurance Company under

24  policy...", and it gives a policy number.  "An agreement

25  should now be prepared between John R. Houston and Whitney E.

1   Houston in which Whitney receives the proceeds of the policy

2   to the extent of any mortgage or unpaid interest due by John.

3   The balance of the insurance proceeds would pass under John's

4   will.  I have reminded John that he should have a will

5   prepared, so the balance of life insurance can pass the way

6   John wants, as well as his real property.  In order to have

7   John focus on this, perhaps you or Sheldon should prepare a

8   draft of a basic will for discussion with John.  I believe

9   between Jerry List and myself we have a handle on the total

10  assets of John's estate."

11          On or about February 14th, 1991, Mr. Rider writes to

12  John requesting that John execute a form supplied by Manhattan

13  Life where Whitney was made irrevocable beneficiary on the

14  policy.  The letter states in part:  "Jim Cinque is in the

15  process of preparing an agreement between you and Whitney

16  regarding the proceeds of the life insurance policy to the

17  extent that there is a mortgage outstanding to Whitney.  In

18  this connection it is suggested that no one can change the

19  beneficiary without the consent or approval of Whitney."

20          Thereafter, John signed the form making Whitney

21  irrevocable beneficiary of the life insurance policy.  This

22  document insured that no one except Whitney can change the

23  beneficiary designation in the policy.  And it reads in part,

24  and it's a quote:  "I hereby request that the beneficiary

25  under my policy number be changed in accordance with the

1   change of beneficiary clause, care of to Whitney E. Houston;

2   with no right of revocation approved and consented to by

3   Whitney E. Houston, I hereby certify that the policy is not

4   now assigned, and that no insolvency or bankruptcy proceedings

5   are pending against me.  The Manhattan Life Insurance Company

6   is hereby requested and directed to make the foregoing

7   revisions as part of said policy; copy here of duly signed by

8   an authorized official of the company, and attached to the

9   policy will constitute an endorsement of the policy."

10         On March 11th, 1991, Mr. Cinque sent the letter to

11   Mr. Rider forwarding a draft of an agreement between Whitney

12   and John, designating that the policy proceeds pay off the

13   note and mortgage, and the remainder went to John's estate.

14         It's undisputed, of course, that there is no

15   evidence that this draft agreement as drafted by Mr. Cinque

16   was signed by either Whitney or John.  I should also state

17   that it's unclear from the record who Mr. Cinque represents in

18   the matter; i.e., he could represent Whitney, John, Nippy or

19   all three.  It wasn't clear to me.  I do know that at

20   depositions Whitney indicated that she didn't even know Mr.

21   Cinque, so it's just difficult to understand his

22   representation.

23         At depositions Mr. Cinque and Mr. Platt had little

24   or no recollection of the draft agreement that I just spoke

25   about or whether any negotiations occurred relating to the

1   draft agreement.  But Mr. Rider surmised that the requested

2   designation of an irrevocable beneficiary in the life

3   insurance policy, "would have been done for Whitney's

4   protection because she did not own the policy."

5          A month later after this draft agreement was

6   forwarded by Mr. Cinque, John retained Gene Korf, of Hannock

7   Wiseman, a firm that doesn't exist anymore, for estate

8   planning purposes.  As part of the estate, Mr. Korf urged an

9   agreement between John and Whitney on the insurance proceeds,

10  in order to ensure an agreement is made.

11         On April 11th, 1991, Mr. Korf wrote to John, and I

12  quote:  "I've determined that there's a one million dollar

13  policy on your life, and that you have irrevocably designated

14  Whitney as the beneficiary of the policy.  Nippy is the owner

15  of the policy.  You've told me that it is your intention for

16  the $750,000 to be paid to your daughter to satisfy the

17  mortgage on your home, and that the rest of the insurance be

18  paid to Peggy."  Peggy is a nickname for Barbara, his wife.

19         "As of now there is no formal agreement to do this.

20  Although I have seen a draft agreement designed to accomplish

21  this, you should follow up with Sheldon Platt's office to make

22  sure this agreement is implemented."

23         That was the advice of Mr. Korf.

24         10 months later on February 26th, 1992, Mr. Korf

25  sent another letter to Mr. List, controller of Nippy, advising

1   him that he had prepared "documents to implement the

2   agreed-upon arrangement with respect to the disposition of the

3   above-referenced insurance proceeds in satisfaction of the

4   $723,000 loan from Whitney to John."

5           On March 3rd, 1992, Mr. Rider sent a letter to

6   Jerome List.  In that letter Mr. Rider was irked at Korf who

7   had "gotten totally carried away with the matter".  But he

8   suggested that the "Cinque draft", be signed by the parties.

9   On May 5th, 1993 Mr. Cinque faxed a copy of the draft

10  agreement to Jerome List.  During '93 and throughout the rest

11  of the policy, the premiums continued to be paid by Nippy, and

12  Whitney continued to be an irrevocable beneficiary, but no

13  agreement was ever signed by John and Whitney.

14          John made his last will and testimony in November

15  1998.  By that time, John was not paying the mortgage, and

16  thus he knew he was in default, and of course the dedication

17  of the insurance proceeds to be paid against the mortgage must

18  have arisen as an important issue at the time.  Curiously

19  enough, nothing occurred.  That last will and testimony was

20  not written by Mr. Korf, but I think it was written by an

21  attorney for the Bressler law firm.

22          In January, 1999, there is a letter from Theodore

23  Beyer, an accountant with Mintz Rosenfeld, to an attorney Fred

24  Gaines in California.  It indicates the proceeds were to pay

25  off the mortgage.  The letter states:  "Per Ira's request --"

1  and I'm not sure who Ira is; "-- enclosed please find a

2  complete copy of our file on John Houston's one million dollar

3  life insurance policy naming Whitney as beneficiary.  The

4  purpose of this life insurance policy is to secure repayment

5  of Whitney's mortgage to John in the event of John's death.

6  As you will see, the premiums for this policy are quite large.

7  In fact, over the years the premiums have totaled almost as

8  much as the face value of the policy, and very little cash has

9  accumulated."

10        On or about March of 2003, a month after John's

11 death, Laurie Yokosbosky, an accountant with Mintz Rosenfeld

12 prepared a draft document analyzing the mortgage payments made

13 by John, and the balance remaining on the mortgage due to the

14 non-payment of interest.

15        Inexplicably, the $1,000,000 life insurance policy

16 was credited against the mortgage debt, but at deposition Ms.

17 Yokosbosky was queried why she credited the proceeds against

18 the mortgage, and she answered that those were her

19 instructions, and she never recalled seeing or hearing

20 anything about an agreement.

21        When John died in February 2003, Whitney received

22 the proceeds of one million dollars.  John had a last will and

23 testament, the will was probated, and the executor deeded the

24 residence to Barbara.  At the time of John's death he owed in

25 excess of a million dollars to Whitney.  Notably, Whitney

1  never objected to the transfer of the residence to Barbara by

2  the executor.  And it does not appear that Whitney filed any

3  type of claim as a creditor in any estate or probate

4  proceedings.

5        At depositions, Whitney had little knowledge or

6  recollection about the life insurance.  At depositions she was

7  asked whether any accountant or controller had discussed the

8  issue of the life insurance policy.  Whitney's reply made

9  little sense to me, but she insisted, "My father had access to

10 certain monies of mine, okay, so he would have had to make up

11 these documents and been able to do that without my

12 knowledge."

13       Despite that answer during depositions, Whitney

14 clearly maintained that she did not sign any documents about

15 the proceeds of the life insurance.  In fact, Whitney

16 initially declared that she had never seen the mortgage

17 related documents until the date of her deposition, but then

18 on redirect she recalled otherwise.

19       Whitney also testified that she did not know

20 anything about the actions of the accountants regarding the

21 life insurance policy.  She never saw any of the letters from

22 the accountants.  She never asked the accountants to prepare

23 any documents related to the life insurance policy proceeds,

24 being used to pay the mortgage.  Whitney indicated that those

25 actions were without her authority and without her knowledge.

1      Although John stopped making payments on his

2  mortgage when he retired in 1997, Whitney never sent her

3  father a default letter or a notice of intent to foreclose.

4  However, after John passed on, Whitney has demanded that

5  Barbara pay the mortgage amount.

6      Whitney's only explanation about the life insurance

7  policy is that it should not be credited toward payment on the

8  mortgage, on the residence, because she paid the premium and,

9  "it was taken out to pay for medical and other expenses John

10 may have needed."

11      Whitney's argument is that Barbara's claim must be

12 dismissed because there is no writing to support it.

13 According to Whitney's attorney, the statute of fraud requires

14 a writing; NJSA 25:1-13(a).  But the position of Whitney does

15 not refer to a later provision which allows parol agreements,

16 proven by clear and convincing evidence, NJSA 25:1-13(b), to

17 be enforced.

18      The statute reads in pertinent part:  An agreement

19 to transfer an interest in real estate or to hold an interest

20 in real estate for the benefit of another, shall not be

21 enforced unless; (1) is a writing; but (B), says in full.  A

22 description of the real estate is sufficient to identify it,

23 the nature of the interest to be transferred, the existence of

24 the agreement, and the identity of the transferor and the

25 transferee are proved by clear and convincing evidence.

1          Barbara's attorney is not so concerned about the

2     content of the statute of frauds, because he argues the

3     statute of frauds does not apply.  Plaintiff's attorney

4     broadly concludes that the statute of fraud applies to real

5     estate transactions, and the controversy here is different.

6          He declares, "The life insurance was created to pay

7     a balance of the mortgage.  It is not intended as a contract

8     of sale of real estate, or a real estate transaction.  The

9     allegations of Barbara Houston's complaint do not even

10    resemble a transfer of real estate.  There was no contract to

11    transfer any real estate in this case.  There is an allegation

12    of a promise to apply life insurance proceeds to the balance

13    of a mortgage, and disavowing of such promise by Whitney

14    Houston."

15         And he concludes, "If a person seeks a discharge of

16    a mortgage, such discharge must be in writing, but the statute

17    refers to the document itself and not the means to obtain such

18    document.  This case is about applying life insurance policy

19    to reduce a balance on the mortgage.  Barbara Houston seeks to

20    receive credit towards the mortgage.  It is admitted she can

21    no longer obtain a discharge of the mortgage based on the life

22    insurance proceeds, because the balance on the mortgage

23    exceeded one million dollars proceeds in 2003 when John

24    Houston died.  However, if she sought a discharge of mortgage,

25    such discharge would have to be in writing.  That is what the

1   statute of frauds says about."

2       Then he continues; "Barbara Houston claims a credit

3   toward the mortgage from the life insurance proceeds.  She is

4   not asking for forgiveness of the mortgage.  This clearly

5   would have to be a written document."

6       As noted by Plaintiff's attorney, there are certain

7   writings required to transfer, "an interest in real estate",

8   NJSA 25:1-11.  Pursuant to the statute of frauds, an interest

9   in real estate means "any right, title or estate in real

10  estate, and shall include a lease of real estate; a lien, such

11  as a mortgage on real estate; a profit; an easement; an

12  interest in trust in real estate; and a share in a cooperative

13  agreement."

14      Moreover the statute further explains, "A transfer

15  of an interest in real estate 'means the sale, gift, creation

16  or extinguishment of an interest in real estate'."

17      A particular note is the term "extinguishment" of

18  an interest in real estate.  And that term is not really well

19  defined in the statute or in New Jersey case law.  In Blacks

20  Law Dictionary, extinguishment is defined as "the cessation or

21  cancellation of some interest or right, for example, the

22  extinguishment of a legacy occurs when the item bequeathed no

23  longer exists or no longer belongs to the testator's estate."

24      And then Black's defines "extinguishment of lien",

25  which means a lien's discharge by operation of law.

1        It seems to me the alleged agreement to use the

2  insurance proceeds to pay off the mortgage is an

3  extinguishment of Whitney's mortgage.  As such, it is subject

4  to NJSA 25:1-11.

5        Under that provision an extinguishment may occur;

6  (1), if there is a writing signed by or on behalf of the

7  transferor; or (2), the transferee is in possession of the

8  real estate as a result of the transfer and has paid the

9  consideration.  Unless one of these two are satisfied, then

10  the alleged agreement is subject to the statute of frauds.

11        In this case, number one does not apply because

12  there is no agreement signed by either Whitney or John about

13  the agreement; nor does two apply, because Whitney paid for

14  the policy premium, and John has not paid the consideration

15  for the premium.

16        So, it seems to me that the logical thing to do is

17  to follow the statute, which would bring us back to NJSA

18  25:1-13.  As such the Court is directed back to the statute of

19  frauds in order to evaluate whether there's a binding, as the

20  Plaintiff calls it, "promise", that is whether there's a

21  binding promise to satisfy the statute.

22        The Court looks to Subsection B of the statute of

23  frauds wherein Plaintiff must prove by clear and convincing

24  evidence the existence of an agreement.  That's NJSA

25  25:1-13(b).  See also, *Morton versus Orchard Land*, 180 NJ 182,

**1**  2004; and *McBarron versus Kipling Woods*, 365 NJ Super 114,

**2**  2004.

**3**  Generally, the clear and convincing standard is a

**4**  high burden of proof.  The term is defined generally as

**5**  evidence indicating that the thing to be proved is highly

**6**  probable or reasonably certain.  This is a greater burden than

**7**  the preponderance of the evidence, the standard applied in

**8**  most trials; but less than evidence beyond a reasonable doubt,

**9**  the norm in most criminal trials (Black's Law Dictionary).

**10**  See also Third circuit Model Civil Jury Instructions, Section

**11**  1.11; *Crozen v. Missouri Department of Health*, 497 U.S. 286

**12**  n.11 (1990).

**13**  An agreement must be made between the parties by

**14**  which they intend to be bound.  When an agreement has not been

**15**  reduced to writing, a high standard of proof must be proven.

**16**  See *Morton*, 180 N.J. 186 and 187.  Above I have referenced to

**17**  the *Morton* and *McBarron* cases.  In *McBarron*, the appellate

**18**  division of the superior court emphasized that most questions

**19**  require a jury to determine most disputes; but in *Morton,* six

**20**  months later, the Supreme Court determined a "clear and

**21**  convincing standard" without a jury.  This case is more like

**22**  *Morton* and a jury is not necessary.

**23**  In my view no reasonable jury could find that the

**24**  Plaintiff meets its burden by clear and convincing evidence

**25**  for the following reasons.  First, Whitney denies having made

1   any such agreement; second, Cinque and Rider have no

2   recollection of such agreement; third, Yokosbosky, the

3   accountant, never heard of any agreement; fourth, no one has

4   produced a signed agreement; fifth, a Cinque draft and a Korf

5   draft were never executed, and John was specifically apprised

6   of both of those drafts.

7        Sixth, the life insurance policy and the irrevocable

8   beneficiary endorsements have no mention of real estate within

9   them or that the note and mortgage must be satisfied.

10       Most importantly, the Korf letter, from which I had

11   read earlier, indicates that John knew that an agreement was

12   necessary to apply the proceeds of the policy against the

13   mortgage indebtedness.  And after he received this letter, it

14   never amounted to any action by John.  Mr. Korf said at one

15   point:  "As of now there is no formal arrangement to do this,

16   although I have seen a draft agreement designed to accomplish

17   this.  You should follow up with Sheldon Platt's office to

18   make sure this agreement is implemented."

19       So that John had notice of the fact that no

20   agreement had been signed by or reached with Whitney.  Despite

21   the notice of the issue, the parties did nothing to change it

22   during John's lifetime, and this was from 1992 to 2003, which

23   was 11 years.  Although we condensed all the facts carefully

24   above, the ongoings were over a long period of time.

25       Seventh, Plaintiff's counsel argues that the

1    representations of Whitney's representatives are sufficient to

2    require a jury trial.  I do not see it.  Cinque, Platt and

3    others do not recall any representations or even any

4    negotiations.  Hence, there's no agreement that a jury could

5    find by clear and convincing evidence.

6          Even if Barbara's attorney is correct and the

7    statute of fraud doesn't apply, then Barbara would be required

8    to prove that there was some type of contract, and under that

9    scenario the plaintiff would still have to prove by a

10   preponderance of the evidence that there was a breach of the

11   contract, or there was past performance on the contract.  And

12   even under those circumstances based on the facts I had set

13   forth above, the Plaintiff cannot even show by a preponderance

14   of the evidence that there was such an agreement.

15         According to Black's Law Dictionary, preponderance

16   of the evidence is just, as we know it, means the greater

17   weight of evidence, not necessarily established by the

18   greatest number of witnesses, but by evidence that has the

19   most convincing force, superior evidentiary weight; that

20   though not sufficient to free the mind wholly of reasonable

21   doubt is still sufficient to incline a fair and impartial mind

22   to one side.  And it's the case of most civil trials.  See

23   Third Circuit Model Civil Jury Instructions, Section 1.10.

24         But here there is no substantive proof whatsoever of

25   any type of contract or agreement between John and Whitney.

*United States District Court*
*Trenton, New Jersey*

1   There were some allegations or some ideation of the fact of an

2   agreement put forth by the accountants and by Mr. Cinque, but

3   generally nothing ever happened with those thoughts.  No one

4   can conclude that any formal writing or oral agreement

5   happened between Whitney and John.  And as such, I find that

6   no jury could find in favor of the Plaintiff, and I'll dismiss

7   that claim.

8          Now, Mr. Garcia, you had brought a motion to dismiss

9   the counterclaim, that is based upon the foreclosure statute.

10  And Mr. Blaney had indicated that I shouldn't dismiss it

11  because of the entire controversy doctrine.  But, there are

12  two parts of Plaintiff's argument.

13         One of Plaintiff's arguments was that it must

14  proceed through a foreclosure action.  Although foreclosure is

15  not asked for in the complaint, Defendant should have

16  counterclaimed for foreclosure -- or Whitney should have

17  brought a foreclosure action in state court.  And Plaintiff

18  argued one can't have a federal court action.

19         MR. GARCIA:  That's correct, Judge.

20         THE COURT:  But if you look at Section 28.5 of

21  Policies and Practices, under the New Jersey Practice Series

22  on the Law of Mortgages, it indicates -- and I'll read it to

23  you; "Under appropriate circumstances with the proper

24  jurisdictional amount involved and diversity of citizenship of

25  the parties, a foreclosure action involving land in New Jersey

1   may be brought in the New Jersey District Court for the

2   District of New Jersey."  And then it cites a few rules.

3          That I would find would not foreclose Whitney from

4   bringing a foreclosure action in the federal court.

5          Then your last point was that the foreclosure act

6   requires that be undertaken first before any case involving a

7   deficiency judgment.  Isn't that right?

8          MR. GARCIA:  That's correct, Judge.

9          THE COURT:  So, at the present time I think you're

10  correct on the theory of the law of mortgages, that under

11  foreclosure you first must proceed with foreclosure, and then

12  after foreclosure you may bring an action for the rest of the

13  amount that is owed --

14         MR. BLANEY:  Your Honor, I don't mean to interrupt

15  you, but that's part of what I mentioned or what I was

16  referencing by entire controversy doctrine.  This action was

17  initiated by Barbara Houston, not by Whitney Houston, we were

18  responding to her action, and I referenced all of that in our

19  response, under the entire controversy doctrine.  We didn't

20  initiate the foreclosure, action was initiated.

21         THE COURT:  All right.  But in your papers you don't

22  even ask for foreclosure.  You ask for monies that are -- to

23  dismiss the complaint, and there was a counterclaim for the

24  monies owed on the mortgage and note.

25         The problem I have with that is the mortgage

 1   document seems to give Whitney the authority or the ability to

 2   request foreclosure.  If I've read it correctly, it says under

 3   the events of default what Whitney can do, and one of the

 4   events of default would be, "sue me for any money that I owe

 5   the lender".  That was what John had agreed upon.  So, that

 6   maybe allowed her to do that.

 7          The statute isn't clear on it, in this case where

 8   you don't bring the foreclosure suit outright.  The issue is

 9   there has been no clear briefing on the answer to Mr. Garcia's

10   last question.  It seems to me, though, that --

11          MR. BLANEY:  Your Honor?

12          THE COURT:  Yes.

13          MR. BLANEY:  I think we might have lost Mr. Garcia.

14          THE COURT:  Oh, we lost Mr. Garcia?

15          MR. BLANEY:  Your Honor, can I call you right back?

16          THE COURT:  All right.

17          (Brief recess.)

18          MR. BLANEY:  Hi, Judge?

19          THE COURT:  Yes?

20          MR. BLANEY:  Brian Blaney.  I believe -- I hope I

21   have Mr. Garcia on again.

22          THE COURT:  Are you there, Mr. Garcia?

23          MR. GARCIA:  Yes.

24          THE COURT:  All right.  The last issue was whether

25   or not Mr. Blaney could proceed on his counterclaim, even

1   though he didn't actually mention foreclosure within it.  And

2   my view is that the counterclaim may not survive because the

3   complaint is dismissed, and there is no claim for foreclosure.

4   Moreover, it's not clear enough exactly as to what Whitney

5   wants.

6           So, at this point I'm dismissing the counterclaim as

7   well.  As Mr. Blaney indicated, he will proceed in state court

8   XXXX foreclosure, unless someone can give me a good reason why

9   I should allow it to stay here in federal court.

10          MR. BLANEY:  Your Honor, the point that is most

11  important for us, is that your Honor's concluded that the

12  mortgage now outstanding in the true measure in terms of the

13  total amount of principle and interest that is owed, I have to

14  candidly tell your Honor I assume that I need to go back to

15  Trenton to foreclose.

16          I don't do real estate work and I wasn't completely

17  comfortably confident that I could pursue foreclosure in the

18  federal court, although I had no reason to doubt that it the

19  Court is competent in appropriately competent jurisdiction.

20          THE COURT:  So at any rate, at the present time,

21  there's no request for foreclosure in this lawsuit that I

22  have.  You didn't ask to amend the complaint to include

23  foreclosure.

24          MR. BLANEY:  Well, what I'm asking your Honor now is

25  to ask for permission that your Honor, if you choose to

1   dismiss, that it be dismissed without prejudice, subject to it

2   subsequently being refiled.

3          THE COURT:  All right.  So the counterclaim is

4   dismissed without prejudice.  So that if Mr. Blaney wishes to

5   move forward in state court, he can do so.

6          MR. BLANEY:  Thank you, your Honor.

7          THE COURT:  All right.

8          MR. GARCIA:  Thank you, your Honor.

9          THE COURT:  Are there any other issues?

10          MR. BLANEY:  No, I only need to request -- and I'm

11   not sure if your reporter is there -- for an expedited copy of

12   the transcript.

13          THE COURT:  All right.  Well, Frank will do.  It you

14   just probably need to send him a check or something.

15          MR. BLANEY:  That's fine, your Honor.  I'll reach

16   out to him and figure out what amount that I need to send to

17   him.

18          THE COURT:  If you just call our office tomorrow,

19   you'll be able to talk to Frank.

20          MR. BLANEY:  That's fine.  That's what I was going

21   to suggest, your Honor.

22          THE COURT:  Thank you.

23          MR. GARCIA:  Thank you, Judge.

24          THE COURT:  All right, bye.

25          (Matter concluded.)


*United States District Court*
*Trenton, New Jersey*

## $

**$1,000,000** [1] - 11:15
**$3,000** [1] - 3:20
**$723,000** [1] - 10:4
**$723,800** [3] - 3:15, 3:19, 5:22
**$750,000** [2] - 5:25, 9:16
**$87,179** [1] - 6:8

## '

**'93** [1] - 10:10
**'means** [1] - 15:15

## /

**/S** [1] - 1:24

## 0

**08-5530** [1] - 1:5
**08608** [1] - 1:10

## 1

**1** [2] - 13:21, 16:6
**1.10** [1] - 19:23
**1.11** [1] - 17:11
**10** [2] - 4:4, 9:24
**11** [1] - 18:23
**11-E** [1] - 5:22
**114** [1] - 17:1
**11th** [2] - 8:10, 9:11
**1332(a)(1)** [1] - 2:23
**14th** [1] - 7:11
**17th** [1] - 6:3
**180** [2] - 16:25, 17:16
**182** [1] - 16:25
**186** [1] - 17:16
**187** [1] - 17:16
**1990** [2] - 3:15, 5:13
**1990)** [1] - 17:12
**1991** [5] - 6:3, 6:12, 7:11, 8:10, 9:11
**1992** [3] - 9:24, 10:5, 18:22
**1993** [1] - 10:9
**1997** [2] - 3:6, 13:2
**1998** [1] - 10:15
**1999** [1] - 10:22

## 2

**2** [1] - 16:7
**20** [1] - 1:8
**2003** [5] - 3:4, 11:10, 11:21, 14:23, 18:22
**2004** [2] - 17:1, 17:2
**2005** [1] - 3:22
**2010** [1] - 1:8
**21st** [1] - 6:12
**23** [1] - 3:15
**25:1-11** [2] - 15:8, 16:4
**25:1-13** [1] - 16:18
**25:1-13(a)** [1] - 13:14
**25:1-13(b)** [1] - 13:18
**25:1-13(b)** [1] - 16:25
**26th** [1] - 9:24
**27** [1] - 5:13
**28** [2] - 1:23, 2:23
**28.5** [1] - 20:20
**286** [1] - 17:11

## 3

**30** [1] - 5:24
**31st** [2] - 3:21, 3:22
**365** [1] - 17:1
**3rd** [1] - 10:5

## 4

**402** [1] - 1:9
**497** [1] - 17:11

## 5

**5th** [1] - 10:9

## 7

**753** [1] - 1:23

## 8

**856** [1] - 1:25
**889-4761** [1] - 1:25

## A

**ability** [1] - 22:1
**able** [3] - 5:25, 12:11, 24:19
**above-referenced** [1] - 10:3
**acceleration** [1] - 4:11
**accept** [1] - 4:25
**access** [1] - 12:9
**accomplish** [2] - 9:20, 18:16
**accordance** [1] - 7:25
**According** [2] - 13:13, 19:15
**accountant** [5] - 5:13, 10:23, 11:11, 12:7, 18:3
**accountants** [4] - 12:20, 12:22, 20:2
**accrued** [1] - 3:20
**accumulated** [1] - 11:9
**Acesto** [1] - 2:15
**acquired** [1] - 6:4
**act** [1] - 21:5
**action** [11] - 5:5, 18:14, 20:14, 20:17, 20:18, 20:25, 21:4, 21:12, 21:16, 21:18, 21:20
**actions** [2] - 12:20, 12:25
**added** [2] - 4:10, 5:1
**addition** [1] - 4:10
**admitted** [1] - 14:20
**advanced** [1] - 6:11
**advice** [1] - 9:23
**advises** [1] - 6:13
**advising** [1] - 9:25
**affairs** [1] - 3:8
**afternoon** [1] - 2:4
**agreed** [2] - 10:2, 22:5
**agreed-upon** [1] - 10:2
**agreement** [39] - 6:14, 6:24, 7:15, 8:11, 8:15, 8:24, 9:1, 9:5, 9:9, 9:10, 9:19, 9:20, 9:22, 10:10, 10:13, 11:20, 13:18, 13:24, 15:13, 16:1, 16:10, 16:12, 16:13, 16:24, 17:13, 17:14, 18:1, 18:2, 18:3, 18:4, 18:11, 18:16, 18:18, 18:20, 19:4, 19:14, 19:25, 20:2, 20:4
**agreements** [1] - 13:15
**allegation** [1] - 14:11
**allegations** [2] - 14:9, 20:1
**alleged** [2] - 16:1, 16:10
**allow** [1] - 23:9
**allowed** [1] - 22:6
**allows** [1] - 13:15

---

**almost** [1] - 11:7
**amend** [1] - 23:22
**amount** [8] - 4:11, 5:22, 6:21, 13:5, 20:24, 21:13, 23:13, 24:16
**amounted** [1] - 18:14
**analyzing** [1] - 11:12
**answer** [2] - 12:13, 22:9
**answered** [1] - 11:18
**appear** [1] - 12:2
**appearances** [1] - 2:10
**appearing** [1] - 2:12
**appellate** [1] - 17:17
**applied** [1] - 17:7
**applies** [1] - 14:4
**apply** [7] - 6:15, 14:3, 14:12, 16:11, 16:13, 18:12, 19:7
**applying** [1] - 14:18
**appoint** [1] - 4:25
**apprised** [1] - 18:5
**appropriate** [1] - 20:23
**appropriately** [1] - 23:19
**approval** [1] - 7:19
**approved** [1] - 8:2
**April** [1] - 9:11
**argued** [1] - 20:18
**argues** [2] - 14:2, 18:25
**argument** [2] - 13:11, 20:12
**arguments** [1] - 20:13
**arisen** [1] - 10:18
**arrangement** [2] - 10:2, 18:15
**assets** [2] - 3:10, 7:10
**assigned** [1] - 8:4
**assume** [1] - 23:14
**attached** [1] - 8:8
**attorney** [8] - 3:18, 10:21, 10:23, 13:13, 14:1, 14:3, 15:6, 19:6
**August** [1] - 3:15
**authority** [2] - 12:25, 22:1
**authorized** [1] - 8:8
**available** [1] - 4:18

## B

**balance** [8] - 6:17, 7:3, 7:5, 11:13, 14:7, 14:12, 14:19, 14:22

---

**bankruptcy** [2] - 4:8, 8:4
**BARBARA** [1] - 1:3
**Barbara** [13] - 3:9, 3:10, 3:12, 9:18, 11:24, 12:1, 13:5, 14:9, 14:19, 15:2, 19:7, 21:17
**Barbara's** [3] - 13:11, 14:1, 19:6
**based** [3] - 14:21, 19:12, 20:9
**basic** [1] - 7:8
**behalf** [3] - 2:13, 2:16, 16:6
**belongs** [1] - 15:23
**beneficiary** [15] - 5:17, 6:1, 6:7, 6:22, 7:13, 7:19, 7:21, 7:23, 7:24, 8:1, 9:2, 9:14, 10:12, 11:13, 18:8
**benefit** [1] - 13:20
**bequeathed** [2] - 3:10, 15:22
**Bergen** [1] - 2:24
**best** [1] - 2:9
**better** [1] - 5:10
**between** [9] - 6:15, 6:25, 7:9, 7:15, 8:11, 9:9, 17:13, 19:25, 20:5
**Beyer** [1] - 10:23
**beyond** [1] - 17:8
**binding** [2] - 16:19, 16:21
**binds** [1] - 3:22
**Black's** [3] - 15:24, 17:9, 19:15
**Blacks** [1] - 15:19
**BLANEY** [16] - 1:18, 2:2, 2:11, 2:14, 21:14, 22:11, 22:13, 22:15, 22:18, 22:20, 23:10, 23:24, 24:6, 24:10, 24:15, 24:20
**Blaney** [7] - 2:9, 2:14, 20:10, 22:20, 22:25, 23:7, 24:4
**borrowers** [1] - 4:9
**bound** [1] - 17:14
**breach** [1] - 19:10
**Bressler** [1] - 10:21
**Brian** [2] - 2:14, 22:20
**Brief** [1] - 22:17
**briefing** [1] - 22:9
**bring** [3] - 16:17, 21:12, 22:8
**bringing** [1] - 21:4
**broadly** [1] - 14:4
**brought** [3] - 20:8,

20:17, 21:1
**BRYAN** [1] - 1:18
**burden** [3] - 17:4,
17:6, 17:24
**business** [2] - 3:5, 3:8
**BY** [3] - 1:15, 1:16,
1:18
**bye** [1] - 24:24

## C

**C.S.R** [1] - 1:24
**California** [1] - 10:24
**cancellation** [1] -
15:21
**candidly** [1] - 23:14
**cannot** [1] - 19:13
**care** [1] - 8:1
**carefully** [1] - 18:23
**carried** [1] - 10:7
**case** [9] - 5:12, 14:11,
14:18, 15:19, 16:11,
17:21, 19:22, 21:6,
22:7
**cases** [1] - 17:17
**cash** [1] - 11:8
**certain** [3] - 12:10,
15:6, 17:6
**Certified** [1] - 1:23
**certify** [1] - 8:3
**cessation** [1] - 15:20
**change** [4] - 7:18,
7:22, 8:1, 18:21
**changed** [2] - 4:6,
7:25
**check** [1] - 24:14
**choose** [1] - 23:25
**Cinque** [16] - 3:18,
5:20, 6:13, 7:14,
8:10, 8:15, 8:17,
8:21, 8:23, 9:6, 10:8,
10:9, 18:1, 18:4,
19:2, 20:2
**circuit** [1] - 17:10
**Circuit** [1] - 19:23
**circumstances** [2] -
19:12, 20:23
**cites** [1] - 21:2
**citizenship** [1] - 20:24
**Civil** [2] - 17:10, 19:23
**CIVIL** [1] - 1:5
**civil** [1] - 19:22
**claim** [4] - 12:3, 13:11,
20:7, 23:3
**claims** [1] - 15:2
**CLARKSON** [1] - 1:9
**clause** [1] - 8:1
**clear** [11] - 8:19,
13:16, 13:25, 16:23,

17:3, 17:20, 17:24,
19:5, 22:7, 22:9,
23:4
**clearly** [2] - 12:14,
15:4
**collection** [1] - 4:24
**comfortably** [1] -
23:17
**company** [1] - 8:8
**Company** [3] - 5:14,
6:23, 8:5
**competent** [1] - 23:19
**complaint** [5] - 14:9,
20:15, 21:23, 23:3,
23:22
**complete** [1] - 11:2
**completely** [1] - 23:16
**concerned** [1] - 14:1
**conclude** [1] - 20:4
**concluded** [2] - 23:11,
24:25
**concludes** [1] - 14:4,
14:15
**condensed** [1] - 18:23
**conference** [1] - 2:3
**confident** [1] - 23:17
**confirmed** [1] - 5:15
**connection** [1] - 7:18
**consent** [2] - 5:2, 7:19
**consented** [1] - 8:2
**consideration** [2] -
16:9, 16:14
**considered** [1] - 3:13
**constitute** [1] - 8:9
**content** [1] - 14:2
**continued** [2] - 10:11,
10:12
**continues** [1] - 15:2
**contract** [6] - 14:7,
14:10, 19:8, 19:11,
19:25
**controller** [3] - 5:15,
9:25, 12:7
**controversy** [4] - 14:5,
20:11, 21:16, 21:19
**convincing** [8] -
13:16, 13:25, 16:23,
17:3, 17:21, 17:24,
19:5, 19:19
**cooperative** [1] -
15:12
**copy** [6] - 5:3, 5:19,
8:7, 10:9, 11:2,
24:11
**corporation** [1] - 3:7
**correct** [5] - 1:23,
19:6, 20:19, 21:8,
21:10
**correctly** [2] - 2:2,
22:2

**counsel** [1] - 18:25
**counterclaim** [6] -
20:9, 21:23, 22:25,
23:2, 23:6, 24:3
**counterclaimed** [1] -
20:16
**County** [1] - 2:24
**course** [2] - 8:14,
10:16
**court** [10] - 4:24, 5:5,
17:18, 20:17, 20:18,
21:4, 23:7, 23:9,
23:18, 24:5
**Court** [7] - 2:20, 2:22,
16:18, 16:22, 17:20,
21:1, 23:19
**COURT** [23] - 1:1,
1:13, 2:1, 2:5, 2:8,
2:17, 20:20, 21:9,
21:21, 22:12, 22:14,
22:16, 22:19, 22:22,
22:24, 23:20, 24:3,
24:7, 24:9, 24:13,
24:18, 24:22, 24:24
**COURT'S** [1] - 1:21
**COURTHOUSE** [1] -
1:9
**covering** [3] - 5:16,
5:22, 5:25
**created** [1] - 14:6
**creation** [1] - 15:15
**credit** [2] - 14:20, 15:2
**credited** [3] - 11:16,
11:17, 13:7
**creditor** [1] - 12:3
**criminal** [1] - 17:9
**Crozen** [1] - 17:11
**Curiously** [1] - 10:18

## D

**Dan** [1] - 2:15
**date** [2] - 4:4, 12:17
**Dating** [1] - 5:13
**daughter** [3] - 3:12,
3:13, 9:16
**days** [2] - 4:4, 5:24
**death** [7] - 3:4, 3:10,
5:12, 6:17, 11:5,
11:11, 11:24
**debt** [2] - 3:1, 11:16
**decedent** [3] - 3:3,
3:19, 3:22
**December** [1] - 3:21
**declare** [1] - 4:2
**declared** [1] - 12:16
**declares** [2] - 4:20,
14:6
**dedication** [1] - 10:16

**deeded** [1] - 11:23
**default** [10] - 4:1, 4:2,
4:18, 4:19, 4:20,
10:16, 13:3, 22:3,
22:4
**DEFENDANT** [2] - 1:6,
1:19
**defendant** [2] - 2:16
**Defendant** [3] - 2:21,
3:11, 20:15
**DEFENDANT'S** [1] -
1:21
**deficiency** [1] - 21:7
**defined** [3] - 15:19,
15:20, 17:4
**defines** [1] - 15:24
**demanded** [1] - 13:4
**denies** [1] - 17:25
**Department** [1] -
17:11
**deposition** [2] - 11:16,
12:17
**depositions** [6] - 6:9,
8:20, 8:23, 12:5,
12:6, 12:13
**description** [1] - 13:22
**designated** [2] - 6:7,
9:13
**designating** [1] - 8:12
**designation** [2] - 7:23,
9:2
**designed** [2] - 9:20,
18:16
**Despite** [2] - 12:13,
18:20
**details** [1] - 3:25
**determine** [1] - 17:19
**determined** [2] - 9:12,
17:20
**Dictionary** [2] - 15:20,
19:15
**Dictionary)** [1] - 17:9
**died** [4] - 3:3, 5:18,
11:21, 14:24
**different** [1] - 14:5
**difficult** [1] - 8:21
**directed** [2] - 8:6,
16:18
**disavowing** [1] -
14:13
**discharge** [6] - 14:15,
14:16, 14:21, 14:24,
14:25, 15:25
**discussed** [2] - 5:23,
12:7
**discussion** [2] - 5:16,
7:8
**dismiss** [5] - 20:6,
20:8, 20:10, 21:23,
24:1

**dismissed** [4] - 13:12,
23:3, 24:1, 24:4
**dismissing** [1] - 23:6
**disposition** [1] - 10:2
**disputes** [1] - 17:19
**District** [2] - 21:1, 21:2
**DISTRICT** [4] - 1:1,
1:1, 1:13, 1:13
**diversity** [2] - 2:22,
20:24
**division** [1] - 17:18
**doctrine** [3] - 20:11,
21:16, 21:19
**document** [6] - 7:22,
11:12, 14:17, 14:18,
15:5, 22:1
**documents** [5] - 10:1,
12:11, 12:14, 12:17,
12:23
**dollar** [2] - 9:12, 11:2
**dollars** [5] - 6:6, 6:21,
11:22, 11:25, 14:23
**done** [2] - 2:2, 9:3
**doubt** [3] - 17:8,
19:21, 23:18
**draft** [13] - 7:8, 8:11,
8:15, 8:24, 9:1, 9:5,
9:20, 10:8, 10:9,
11:12, 18:4, 18:5,
18:16
**drafted** [1] - 8:15
**drafts** [1] - 18:6
**due** [5] - 4:4, 4:12,
6:17, 7:2, 11:13
**duly** [1] - 8:7
**During** [1] - 10:10
**during** [2] - 12:13,
18:22

## E

**easement** [1] - 15:11
**EAST** [1] - 1:9
**either** [3] - 3:3, 8:16,
16:12
**emphasized** [1] -
17:18
**enclosed** [1] - 11:1
**end** [2] - 3:21, 5:1
**ended** [1] - 3:5
**endorsement** [1] - 8:9
**endorsements** [1] -
18:8
**enforced** [2] - 13:17,
13:21
**ensure** [1] - 9:10
**entered** [1] - 6:5
**entire** [3] - 20:11,
21:16, 21:19

enumerated [1] - 4:17
ESQUIRE [2] - 1:16,
  1:18
established [1] -
  19:17
estate [27] - 6:18,
  7:10, 8:13, 9:7, 9:8,
  12:3, 13:19, 13:20,
  13:22, 14:5, 14:8,
  14:10, 14:11, 15:7,
  15:9, 15:10, 15:11,
  15:12, 15:15, 15:18,
  15:23, 16:8, 18:8,
  23:16
estate' [1] - 15:16
evaluate [1] - 16:19
event [2] - 5:18, 11:5
events [4] - 3:25, 4:1,
  22:3, 22:4
evidence [14] - 8:15,
  13:16, 13:25, 16:24,
  17:5, 17:7, 17:8,
  17:24, 19:5, 19:10,
  19:14, 19:16, 19:17,
  19:18
evidentiary [1] - 19:19
exactly [1] - 23:4
example [1] - 15:21
exceeded [1] - 14:23
except [1] - 7:22
excess [1] - 11:25
execute [1] - 7:12
executed [1] - 18:5
executive [1] - 3:4
executor [2] - 11:23,
  12:2
executors) [1] - 3:24
exist [1] - 9:7
existence [2] - 13:23,
  16:24
exists [1] - 15:23
expedited [1] - 24:11
expenses [1] - 13:9
explains [1] - 15:14
explanation [1] - 13:6
extent [2] - 7:2, 7:17
extinguishment [7] -
  15:16, 15:17, 15:20,
  15:22, 15:24, 16:3,
  16:5

**F**

face [1] - 11:8
fact [4] - 11:7, 12:15,
  18:19, 20:1
facts [2] - 18:23, 19:12
fail [2] - 4:3, 4:5
fair [1] - 19:21

family [1] - 2:23
famous [1] - 3:11
far [1] - 5:13
father [2] - 12:9, 13:3
favor [2] - 5:21, 20:6
faxed [1] - 10:9
February [4] - 3:4,
  7:11, 9:24, 11:21
federal [4] - 20:18,
  21:4, 23:9, 23:18
few [1] - 21:2
fifth [1] - 18:4
figure [1] - 24:16
file [1] - 11:2
filed [1] - 12:2
finalized [1] - 5:24
finally [1] - 6:20
fine [3] - 2:11, 24:15,
  24:20
firm [4] - 2:14, 5:14,
  9:7, 10:21
first [2] - 21:6, 21:11
First [1] - 17:25
FISHER [1] - 1:9
flight [1] - 2:5
focus [1] - 7:7
follow [3] - 9:21,
  16:17, 18:17
following [2] - 4:23,
  17:25
follows [1] - 4:1
FOR [3] - 1:17, 1:19,
  1:21
force [1] - 19:19
foreclose [1] - 13:3,
  21:3, 23:15
foreclosure [23] - 4:7,
  5:5, 20:9, 20:14,
  20:16, 20:17, 20:25,
  21:4, 21:5, 21:11,
  21:12, 21:20, 21:22,
  22:2, 22:8, 23:1,
  23:3, 23:8, 23:17,
  23:21, 23:23
foregoing [1] - 8:6
forgiveness [1] - 15:4
form [3] - 4:11, 7:12,
  7:20
formal [3] - 9:19,
  18:15, 20:4
forth [3] - 4:21, 19:13,
  20:2
forward [1] - 24:5
forwarded [1] - 9:6
forwarding [1] - 8:11
fourth [1] - 18:3
Francis [1] - 1:24
FRANCIS [1] - 1:24
Frank [2] - 24:13,

24:19
fraud [3] - 13:13, 14:4,
  19:7
frauds [7] - 14:2, 14:3,
  15:1, 15:8, 16:10,
  16:19, 16:23
Fred [1] - 10:23
free [1] - 19:20
full [2] - 4:14, 13:21

**G**

GABLE [1] - 1:24
Gable [1] - 1:24
Gaines [1] - 10:24
Garcia [8] - 2:3, 2:6,
  2:12, 20:8, 22:13,
  22:14, 22:21, 22:22
GARCIA [10] - 1:16,
  1:16, 2:4, 2:7, 2:12,
  20:19, 21:8, 22:23,
  24:8, 24:23
Garcia's [1] - 22:9
Gene [1] - 9:6
Generally [1] - 17:3
generally [2] - 17:4,
  20:3
gift [1] - 15:15
Gil [1] - 2:12
GILBERTO [1] - 1:16
given [1] - 4:21
great [2] - 2:7
greater [2] - 17:6,
  19:16
greatest [1] - 19:18

**H**

handle [1] - 7:9
Hannock [1] - 9:6
hard [1] - 5:3
Health [1] - 17:11
hear [1] - 2:18
heard [1] - 18:3
hearing [1] - 11:19
heirs [1] - 3:23
Hello [1] - 2:1
Hence [1] - 19:4
hereby [3] - 7:24, 8:3,
  8:6
hereunder [1] - 4:14
Hi [2] - 2:2, 22:18
high [1] - 17:4, 17:15
highly [1] - 17:5
hold [1] - 13:19
holder [1] - 4:7
home [1] - 9:17
Honor [11] - 21:14,

22:11, 22:15, 23:10,
  23:14, 23:24, 23:25,
  24:6, 24:8, 24:15,
  24:21
Honor's [1] - 23:11
HONORABLE [1] -
  1:12
hope [2] - 2:3, 22:20
HOUSTON [1] - 1:3,
  1:6
Houston [20] - 2:8,
  2:16, 2:21, 3:2, 3:9,
  5:21, 5:22, 6:20,
  6:21, 6:25, 7:1, 8:1,
  8:3, 14:14, 14:19,
  14:24, 15:2, 21:17
Houston's [2] - 11:2,
  14:9

**I**

i.e [1] - 8:18
ideation [1] - 20:1
identify [1] - 13:22
identity [1] - 13:24
immediate [1] - 4:13
impartial [1] - 19:21
implement [1] - 10:1
implemented [2] -
  9:22, 18:18
important [2] - 10:18,
  23:11
importantly [1] - 18:10
Inc [4] - 3:5, 3:7, 6:4,
  6:22
incline [1] - 19:21
include [2] - 15:10,
  23:22
includes [1] - 4:22
including [1] - 4:24
indebtedness [1] -
  18:13
indicated [5] - 6:9,
  8:20, 12:24, 20:10,
  23:7
indicates [3] - 10:24,
  18:11, 20:22
indicating [1] - 17:5
Inexplicably [1] -
  11:15
initiate [1] - 21:20
initiated [2] - 21:17,
  21:20
insisted [1] - 12:9
insolvency [2] - 4:8,
  8:4
Instructions [2] -
  17:10, 19:23
instructions [1] -

11:19
insurance [33] - 2:25,
  5:16, 5:23, 6:3, 6:4,
  6:13, 6:19, 6:23, 7:3,
  7:5, 7:16, 7:21, 9:3,
  9:9, 9:17, 10:3,
  10:17, 11:3, 11:4,
  11:15, 12:6, 12:8,
  12:15, 12:21, 12:23,
  13:6, 14:6, 14:12,
  14:18, 14:22, 15:3,
  16:2, 18:7
Insurance [3] - 6:5,
  6:23, 8:5
insured [3] - 5:11, 6:7,
  7:22
intend [1] - 17:14
intended [1] - 14:7
intent [1] - 13:3
intention [1] - 9:15
interest [16] - 3:20,
  6:17, 7:2, 11:14,
  13:19, 13:23, 15:7,
  15:8, 15:12, 15:15,
  15:16, 15:18, 15:21,
  23:13
interrupt [2] - 2:18,
  21:14
involved [1] - 20:24
involving [2] - 20:25,
  21:6
Ira [1] - 11:1
Ira's [1] - 10:25
irked [1] - 10:6
irrevocable [5] - 7:13,
  7:21, 9:2, 10:12,
  18:7
irrevocably [1] - 9:13
issue [5] - 10:18, 12:8,
  18:21, 22:8, 22:24
issued [1] - 6:6
issues [1] - 24:9
item [1] - 15:22
itself [1] - 14:17

**J**

James [1] - 3:18
January [3] - 6:3,
  6:12, 10:22
jelled [1] - 3:14
Jerome [2] - 10:6,
  10:10
Jerry [1] - 7:9
JERSEY [3] - 1:1,
  1:10, 1:13
Jersey [5] - 15:19,
  20:21, 20:25, 21:1,
  21:2

**Jim** [3] - 5:20, 6:13, 7:14
**John** [51] - 3:2, 3:3, 3:4, 3:9, 3:10, 3:12, 3:15, 3:25, 5:12, 5:18, 5:21, 6:6, 6:15, 6:20, 6:25, 7:2, 7:4, 7:6, 7:7, 7:8, 7:12, 7:20, 8:12, 8:16, 8:18, 9:6, 9:9, 9:11, 10:4, 10:13, 10:14, 10:15, 11:2, 11:5, 11:13, 11:17, 11:22, 13:1, 13:4, 13:9, 14:23, 16:12, 16:14, 18:5, 18:11, 18:14, 18:19, 19:25, 20:5, 22:5
**John's** [12] - 3:5, 5:16, 5:25, 6:4, 6:18, 7:3, 7:10, 8:13, 11:5, 11:10, 11:24, 18:22
**John)** [1] - 6:11
**Judge** [8] - 2:1, 2:2, 2:4, 2:12, 20:19, 21:8, 22:18, 24:23
**JUDGE** [1] - 1:13
**judgment** [2] - 2:21, 21:7
**JUDGMENT** [1] - 1:21
**July** [1] - 3:21
**June** [1] - 5:13
**jurisdiction** [2] - 2:22, 23:19
**jurisdictional** [1] - 20:24
**Jury** [2] - 17:10, 19:23
**jury** [7] - 17:19, 17:21, 17:22, 17:23, 19:2, 19:4, 20:6

**K**

**keep** [1] - 4:5
**Kipling** [1] - 17:1
**knowledge** [3] - 12:5, 12:12, 12:25
**known** [1] - 5:5
**Korf** [10] - 9:6, 9:8, 9:11, 9:23, 9:24, 10:6, 10:20, 18:4, 18:10, 18:14
**KRICKO** [1] - 1:16

**L**

**lack** [1] - 5:10
**Land** [1] - 16:25
**land** [1] - 20:25

**large** [1] - 11:6
**last** [6] - 10:14, 10:19, 11:22, 21:5, 22:10, 22:24
**Laurie** [1] - 11:11
**law** [4] - 2:14, 4:21, 10:21, 15:19, 15:25, 21:10
**Law** [4] - 15:20, 17:9, 19:15, 20:22
**lawsuit** [1] - 23:11
**lease** [1] - 15:10
**leave** [1] - 5:4
**legacy** [1] - 15:22
**lender** [4] - 4:2, 4:19, 4:21, 5:8
**Lender** [1] - 4:13
**lender"** [1] - 22:5
**lender's** [1] - 4:16
**Lender's** [1] - 4:19
**less** [1] - 17:8
**letter** [13] - 5:19, 5:20, 6:19, 7:14, 8:10, 9:25, 10:5, 10:6, 10:22, 10:25, 13:3, 18:10, 18:13
**letters** [1] - 12:21
**lien** [3] - 4:7, 15:10, 15:24
**lien's** [1] - 15:25
**Life** [4] - 6:5, 6:23, 7:13, 8:5
**life** [31] - 2:25, 5:16, 5:17, 5:23, 5:25, 6:3, 6:4, 6:13, 6:19, 6:20, 7:5, 7:16, 7:21, 9:2, 9:13, 11:3, 11:4, 11:15, 12:6, 12:8, 12:15, 12:21, 12:23, 13:6, 14:6, 14:12, 14:18, 14:21, 15:3, 18:7
**lifetime** [1] - 18:22
**List** [6] - 5:15, 5:19, 7:9, 9:25, 10:6, 10:10
**loan** [2] - 3:16, 10:4
**loaned** [1] - 3:15
**located** [1] - 2:24
**logical** [1] - 16:16
**look** [2] - 5:4, 20:20
**looks** [1] - 16:22
**lost** [2] - 22:13, 22:14
**louder** [1] - 2:18

**M**

**maintained** [1] - 12:14
**manage** [1] - 4:23

**manages** [1] - 3:8
**Manhattan** [4] - 6:5, 6:23, 7:12, 8:5
**March** [3] - 8:10, 10:5, 11:10
**MARCUS** [1] - 1:18
**Marcus** [1] - 2:15
**Matter** [1] - 24:25
**matter** [3] - 2:20, 2:23, 8:18
**matter"** [1] - 10:7
**McBarron** [3] - 17:1, 17:17
**McLaughlin** [2] - 1:18, 2:15
**mean** [1] - 21:14
**means** [4] - 14:17, 15:9, 15:25, 19:16
**measure** [1] - 23:12
**medical** [1] - 13:9
**meets** [1] - 17:24
**mention** [2] - 18:8, 23:1
**mentioned** [1] - 21:15
**might** [1] - 22:13
**million** [7] - 6:6, 6:21, 9:12, 11:2, 11:22, 11:25, 14:23
**mind** [2] - 19:20, 19:21
**mine** [1] - 12:10
**Mintz** [2] - 10:23, 11:11
**Missouri** [1] - 17:11
**Model** [2] - 17:10, 19:23
**money** [3] - 5:8, 6:11, 22:4
**monies** [3] - 12:10, 11:22, 21:24
**month** [2] - 9:5, 11:10
**monthly** [1] - 3:19
**months** [2] - 9:24, 17:20
**Moreover** [2] - 15:14, 23:4
**mortgage** [57] - 3:1, 3:17, 3:18, 3:22, 3:25, 4:3, 4:4, 4:5, 4:11, 4:17, 4:18, 4:20, 4:22, 5:4, 5:7, 5:9, 5:11, 5:18, 5:21, 6:2, 6:16, 7:2, 7:17, 8:13, 9:17, 10:15, 10:17, 10:25, 11:5, 11:12, 11:13, 11:16, 11:18, 12:16, 12:24, 13:2, 13:5, 13:8, 14:7, 14:13, 14:16, 14:19, 14:20, 14:21,

14:22, 14:24, 15:3, 15:4, 15:11, 16:2, 16:3, 18:9, 18:13, 21:24, 21:25, 23:12
**Mortgages** [1] - 20:22
**mortgages** [1] - 2:22
**Morton** [5] - 16:25, 17:16, 17:17, 17:19, 17:22
**most** [7] - 17:8, 17:9, 17:18, 17:19, 19:19, 19:22, 23:10
**Most** [1] - 18:10
**motion** [2] - 2:20, 20:8
**MOTION** [1] - 1:21
**move** [1] - 24:5
**MR** [23] - 2:2, 2:4, 2:7, 2:11, 2:12, 2:14, 20:19, 21:8, 21:14, 22:11, 22:13, 22:15, 22:18, 22:20, 22:23, 23:10, 23:24, 24:6, 24:8, 24:10, 24:15, 24:20, 24:23
**must** [9] - 10:17, 13:11, 14:16, 16:23, 17:13, 17:15, 18:9, 20:13, 21:11

**N**

**n.11** [1] - 17:12
**N.J** [1] - 17:16
**named** [1] - 6:21
**naming** [4] - 5:17, 6:1, 6:6, 11:3
**nature** [1] - 13:23
**necessarily** [1] - 19:17
**necessary** [2] - 17:22, 18:12
**need** [4] - 23:14, 24:10, 24:14, 24:16
**needed** [1] - 13:10
**negotiated** [1] - 5:9
**negotiations** [2] - 8:25, 19:4
**never** [10] - 3:13, 11:19, 12:1, 12:16, 12:21, 12:22, 13:2, 18:3, 18:5, 18:14
**NEW** [3] - 1:1, 1:10, 1:13
**New** [5] - 15:19, 20:21, 20:25, 21:1, 21:2
**next** [1] - 5:24
**nickname** [1] - 9:18
**Nippy** [5] - 3:5, 3:7, 5:15, 6:4, 6:6, 6:22, 8:18, 9:14, 9:25,

10:11
**NJ** [2] - 16:25, 17:1
**NJSA** [6] - 13:14, 13:16, 15:8, 16:4, 16:17, 16:24
**NO** [1] - 1:5
**non** [1] - 11:14
**non-payment** [1] - 11:14
**norm** [1] - 17:9
**Norris** [1] - 2:15
**NORRIS** [1] - 1:18
**Notably** [1] - 11:25
**note** [13] - 3:1, 4:2, 4:4, 4:20, 5:1, 5:7, 5:9, 5:11, 5:21, 8:13, 15:17, 18:9, 21:24
**noted** [1] - 15:6
**nothing** [3] - 10:19, 18:21, 20:3
**notice** [3] - 13:3, 18:19, 18:21
**notion** [1] - 5:10
**November** [1] - 10:14
**number** [4] - 6:24, 7:25, 16:11, 19:18

**O**

**objected** [1] - 12:1
**obligation** [1] - 5:7
**obtain** [2] - 14:17, 14:21
**obtained** [3] - 5:17, 6:14, 6:20
**occur** [1] - 16:5
**occurred** [2] - 8:25, 10:19
**occurs** [2] - 4:18, 15:22
**OCTOBER** [1] - 1:8
**OF** [2] - 1:1, 1:13
**office** [3] - 9:21, 18:17, 24:18
**official** [1] - 8:8
**OFFICIAL** [1] - 1:25
**One** [1] - 20:13
**one** [18] - 4:10, 4:22, 6:6, 6:21, 7:18, 7:22, 9:12, 11:2, 11:22, 14:23, 16:9, 16:11, 18:3, 18:14, 19:22, 20:3, 20:18, 22:3
**ongoings** [1] - 18:24
**operation** [1] - 15:25
**OPINION** [1] - 1:21
**oral** [1] - 20:4
**Orchard** [1] - 16:25
**order** [4] - 6:10, 7:6,

9:10, 16:19
**otherwise** [1] - 12:18
**outright** [1] - 22:8
**outstanding** [2] - 7:17, 23:12
**owe** [2] - 5:8, 22:4
**owed** [5] - 3:1, 11:24, 21:13, 21:24, 23:13
**own** [1] - 9:4
**owned** [1] - 3:7
**owner** [4] - 3:2, 6:6, 6:22, 9:14
**ownership** [1] - 4:6

**P**

**paid** [8] - 9:16, 9:18, 10:11, 10:17, 13:8, 16:8, 16:13, 16:14
**papers** [1] - 21:21
**parentheses** [1] - 5:1
**parol** [1] - 13:15
**part** [8] - 4:15, 6:19, 7:14, 7:23, 8:7, 9:8, 13:18, 21:15
**particular** [1] - 15:17
**parties** [5] - 5:4, 10:8, 17:13, 18:21, 20:25
**parts** [1] - 20:12
**pass** [3] - 6:18, 7:3, 7:5
**passed** [1] - 13:4
**past** [1] - 19:11
**pay** [10] - 3:19, 5:18, 6:2, 8:12, 10:24, 12:24, 13:5, 13:9, 14:6, 16:2
**paying** [1] - 10:15
**payment** [5] - 2:25, 4:14, 5:11, 11:14, 13:7
**payments** [5] - 3:20, 3:21, 4:3, 11:12, 13:1
**Peggy** [2] - 9:18
**pending** [1] - 8:5
**Per** [1] - 10:25
**performance** [1] - 19:11
**perhaps** [1] - 7:7
**period** [1] - 18:24
**permission** [2] - 4:16, 23:25
**person** [1] - 14:15
**pertinent** [1] - 13:18
**PETER** [1] - 1:12
**PGS** [1] - 1:5
**ph** [1] - 2:15
**Plaintiff** [6] - 16:20,

16:23, 17:24, 19:13, 20:6, 20:17
**plaintiff** [3] - 2:13, 3:8, 19:9
**PLAINTIFF** [2] - 1:4, 1:17
**Plaintiff's** [5] - 14:3, 15:6, 18:25, 20:12, 20:13
**planning** [1] - 9:8
**Platt** [2] - 8:23, 19:2
**Platt's** [2] - 9:21, 18:17
**plus** [1] - 3:20
**point** [4] - 18:15, 21:5, 23:6, 23:10
**Policies** [1] - 20:21
**policy** [39] - 5:16, 5:25, 6:3, 6:5, 6:9, 6:13, 6:16, 6:22, 6:24, 7:1, 7:14, 7:16, 7:21, 7:23, 7:25, 8:3, 8:7, 8:9, 8:12, 9:3, 9:4, 9:13, 9:14, 9:15, 10:11, 11:3, 11:4, 11:6, 11:8, 11:15, 12:8, 12:21, 12:23, 13:7, 14:18, 16:14, 18:7, 18:12
**policy..** [1] - 6:24
**position** [1] - 13:14
**possession** [2] - 4:23, 16:7
**Practice** [1] - 20:21
**Practices** [1] - 20:21
**prejudice** [2] - 24:1, 24:4
**premises** [1] - 4:12
**premium** [3] - 13:8, 16:14, 16:15
**premiums** [4] - 6:8, 10:11, 11:6, 11:7
**prepare** [3] - 5:20, 7:7, 12:22
**prepared** [6] - 3:18, 6:15, 6:25, 7:5, 10:1, 11:12
**preparing** [1] - 7:15
**preponderance** [4] - 17:7, 19:10, 19:13, 19:15
**present** [2] - 21:9, 23:20
**primary** [1] - 6:22
**principle** [1] - 23:13
**probable** [1] - 17:6
**probate** [1] - 12:3
**probated** [1] - 11:23
**problem** [1] - 21:25
**proceed** [4] - 20:14,

21:11, 22:25, 23:7
**proceedings** [4] - 4:8, 4:9, 8:4, 12:4
**proceeds** [21] - 2:25, 6:1, 6:16, 7:1, 7:3, 7:16, 8:12, 9:9, 10:3, 10:17, 10:24, 11:17, 11:22, 12:15, 12:23, 14:12, 14:22, 14:23, 15:3, 16:2, 18:12
**process** [1] - 7:15
**procured** [1] - 6:10
**produced** [1] - 18:4
**profit** [1] - 15:11
**profits** [1] - 4:24
**promise** [5] - 4:5, 14:12, 14:13, 16:20, 16:21
**promised** [1] - 3:19
**proof** [3] - 17:4, 17:15, 19:24
**proper** [1] - 20:23
**property** [8] - 4:6, 4:7, 4:15, 4:23, 4:25, 5:6, 7:6
**protect** [1] - 6:10
**protection** [1] - 9:4
**prove** [3] - 16:23, 19:8, 19:9
**proved** [2] - 13:25, 17:5
**proven** [2] - 13:16, 17:15
**provides** [1] - 4:11
**provision** [2] - 13:15, 16:5
**purchase** [1] - 3:16
**purpose** [1] - 11:4
**purposes** [1] - 9:8
**pursuant** [1] - 5:15
**Pursuant** [1] - 15:8
**pursue** [1] - 23:17
**put** [2] - 2:9, 20:2

**Q**

**quarrel** [1] - 2:23
**queried** [1] - 11:17
**questions** [1] - 17:18
**quite** [1] - 11:6
**quote** [4] - 4:12, 4:19, 7:24, 9:12

**R**

**R.M.R** [1] - 1:24
**rate** [1] - 23:20
**reach** [1] - 24:15

**reached** [1] - 18:20
**read** [4] - 5:3, 18:11, 20:22, 22:2
**reads** [3] - 6:19, 7:23, 13:18
**real** [21] - 7:6, 13:19, 13:20, 13:22, 14:4, 14:8, 14:10, 14:11, 15:7, 15:9, 15:10, 15:11, 15:12, 15:15, 15:16, 15:18, 16:8, 18:8, 23:16
**really** [2] - 3:14, 15:18
**reason** [3] - 4:6, 23:8, 23:18
**reasonable** [3] - 17:8, 17:23, 19:20
**reasonably** [1] - 17:19
**reasons** [1] - 17:25
**recalled** [2] - 11:19, 12:18
**receive** [2] - 6:11, 14:20
**received** [2] - 11:21, 18:13
**receiver** [1] - 4:25
**receivership** [1] - 4:8
**receives** [1] - 7:1
**recess** [1] - 22:17
**recollection** [3] - 8:24, 12:6, 18:2
**recommending** [1] - 5:20
**record** [2] - 2:10, 8:17
**redirect** [1] - 12:18
**reduce** [2] - 5:6, 14:19
**reduced** [1] - 17:15
**refer** [2] - 3:3, 13:15
**referenced** [1] - 10:3, 17:16, 21:18
**referencing** [1] - 21:16
**referring** [1] - 6:11
**refers** [1] - 14:17
**refiled** [1] - 24:2
**regarding** [2] - 7:16, 12:20
**related** [2] - 12:17, 12:23
**relating** [1] - 8:25
**relationship** [2] - 3:5, 3:13
**remainder** [1] - 8:13
**remaining** [1] - 11:13
**remedies** [1] - 4:17
**reminded** [1] - 7:4
**renovation** [1] - 3:16
**rent** [1] - 4:25
**rents** [1] - 4:24
**repayment** [1] - 11:4

**reply** [1] - 12:8
**REPORTER** [1] - 1:25
**reporter** [1] - 24:11
**represent** [1] - 8:18
**representation** [1] - 8:22
**representations** [2] - 19:1, 19:3
**representatives** [1] - 19:1
**represents** [1] - 8:17
**request** [5] - 7:24, 10:25, 22:2, 23:21, 24:10
**requested** [2] - 8:6, 9:1
**requesting** [1] - 7:12
**require** [4] - 4:13, 17:19, 19:2
**required** [4] - 1:23, 4:3, 15:7, 19:7
**requires** [2] - 13:13, 21:6
**resemble** [1] - 14:10
**residence** [8] - 2:24, 2:25, 3:2, 3:16, 3:17, 11:24, 12:1, 13:8
**respect** [1] - 10:2
**responding** [1] - 21:18
**response** [1] - 21:19
**responsibilities** [1] - 3:23
**rest** [3] - 9:17, 10:10, 21:12
**result** [2] - 5:6, 16:8
**retained** [1] - 9:6
**retired** [1] - 13:2
**revisions** [1] - 8:7
**revocation** [1] - 8:2
**Rider** [11] - 5:14, 5:19, 6:9, 6:12, 7:11, 8:11, 9:1, 10:5, 10:6, 18:1
**rights** [2] - 4:19, 4:21
**Robert** [1] - 5:14
**Rosenfeld** [2] - 10:23, 11:11
**rules** [1] - 21:2

**S**

**sale** [3] - 5:6, 14:8, 15:15
**satisfaction** [1] - 10:3
**satisfied** [2] - 16:9, 18:9
**satisfy** [3] - 2:25, 9:16, 16:21
**saw** [1] - 12:21

**scenario** [1] - 19:9
**second** [1] - 18:1
**Section** [4] - 1:23, 17:10, 19:23, 20:20
**section** [1] - 4:10
**secure** [1] - 11:4
**secured** [2] - 3:17, 4:14
**see** [2] - 11:6, 19:2
**See** [4] - 16:25, 17:10, 17:16, 19:22
**seeing** [1] - 11:19
**seeks** [2] - 14:15, 14:19
**send** [2] - 24:14, 24:16
**sense** [1] - 12:9
**sent** [4] - 8:10, 9:25, 10:5, 13:2
**Series** [1] - 20:21
**set** [2] - 4:21, 19:12
**Seventh** [1] - 18:25
**shall** [2] - 13:20, 15:10
**share** [1] - 15:12
**Sheldon** [3] - 7:7, 9:21, 18:17
**Sheridan** [1] - 2:1
**SHERIDAN** [1] - 1:12
**show** [1] - 19:13
**side** [1] - 19:22
**sign** [1] - 12:14
**signed** [9] - 7:20, 8:7, 8:16, 10:8, 10:13, 16:6, 16:12, 18:4, 18:20
**six** [1] - 17:19
**Sixth** [1] - 18:7
**sold** [1] - 4:15
**someone** [1] - 23:8
**sought** [1] - 14:24
**specifically** [1] - 18:5
**standard** [4] - 17:3, 17:7, 17:15, 17:21
**start** [1] - 5:5
**started** [1] - 4:9
**starts** [1] - 4:7
**STATE** [1] - 1:9
**state** [4] - 8:16, 20:17, 23:7, 24:5
**STATES** [1] - 1:1
**states** [3] - 4:18, 7:14, 10:25
**statute** [18] - 13:13, 13:18, 14:2, 14:3, 14:4, 14:16, 15:1, 15:8, 15:14, 15:19, 16:10, 16:17, 16:18, 16:21, 16:22, 19:7, 20:9, 22:7
**stay** [1] - 23:9

**stepmother** [1] - 3:13
**still** [2] - 19:9, 19:21
**stopped** [1] - 13:1
**STREET** [1] - 1:9
**subject** [3] - 16:3, 16:10, 24:1
**Subsection** [1] - 16:22
**subsequently** [1] - 24:2
**substantive** [1] - 19:24
**succeed** [1] - 3:23
**sue** [2] - 5:7, 22:4
**sufficient** [4] - 13:22, 19:1, 19:20, 19:21
**suggest** [1] - 24:21
**suggested** [2] - 7:18, 10:8
**suggests** [1] - 6:14
**suit** [1] - 22:8
**SUMMARY** [1] - 1:21
**summary** [1] - 2:21
**sums** [1] - 4:14
**Super** [1] - 17:1
**superior** [2] - 17:18, 19:19
**supplied** [1] - 7:12
**support** [1] - 13:12
**Supreme** [1] - 17:20
**surmised** [1] - 9:1
**survive** [1] - 23:2

---

## T

**telephone** [1] - 5:23
**TELEPHONE** [1] - 1:15
**term** [4] - 5:10, 15:17, 15:18, 17:4
**terms** [1] - 23:12
**testament** [1] - 11:23
**testator's** [1] - 15:23
**testified** [1] - 12:19
**testimony** [2] - 10:14, 10:19
**Theodore** [1] - 10:22
**theory** [1] - 21:10
**Thereafter** [1] - 7:20
**third** [1] - 18:2
**Third** [2] - 17:10, 19:23
**this** [1] - 5:2
**thoughts** [1] - 20:3
**three** [1] - 8:19
**throughout** [2] - 2:22, 10:10
**title** [1] - 15:9
**Title** [1] - 1:23
**together** [1] - 2:15

**tomorrow** [1] - 24:18
**total** [2] - 7:9, 23:13
**totaled** [1] - 11:7
**totally** [1] - 10:7
**toward** [2] - 13:7, 15:3
**towards** [1] - 14:20
**transaction** [1] - 14:8
**transactions** [1] - 14:5
**transcript** [1] - 24:12
**transfer** [8] - 4:12, 12:1, 13:19, 14:10, 14:11, 15:7, 15:14, 16:8
**transferee** [2] - 13:25, 16:7
**transferor** [2] - 13:24, 16:7
**transferred** [2] - 4:16, 13:23
**TRENTON** [1] - 1:10
**Trenton** [1] - 23:15
**trial** [1] - 19:2
**trials** [3] - 17:8, 17:9, 19:22
**true** [2] - 1:23, 23:12
**trust** [1] - 15:12
**two** [3] - 16:9, 16:13, 20:12
**type** [3] - 12:3, 19:8, 19:25

---

## U

**U.S** [3] - 1:13, 1:25, 17:11
**U.S.C** [2] - 1:23, 2:23
**unclear** [1] - 8:17
**under** [11] - 3:1, 5:7, 6:23, 7:3, 7:25, 19:8, 19:12, 20:21, 21:10, 21:19, 22:2
**Under** [2] - 16:5, 20:23
**undertaken** [1] - 21:6
**undisputed** [1] - 8:14
**Unit** [1] - 5:22
**UNITED** [1] - 1:1
**unless** [2] - 13:21, 23:8
**Unless** [1] - 16:9
**unpaid** [2] - 6:16, 7:2
**up** [3] - 9:21, 12:10, 18:17
**urged** [1] - 9:8

---

## V

**value** [1] - 11:8
**versus** [3] - 2:8, 16:25,

17:1
**view** [2] - 17:23, 23:2
**vocalist** [1] - 3:11
**Vs** [1] - 1:5

---

## W

**wants** [2] - 7:6, 23:5
**weight** [2] - 19:17, 19:19
**whatsoever** [1] - 19:24
**wherein** [2] - 6:15, 16:23
**Whitney** [63] - 2:16, 2:21, 2:22, 3:7, 3:11, 3:12, 3:15, 3:19, 4:13, 4:18, 5:17, 5:21, 6:1, 6:7, 6:10, 6:15, 6:21, 6:25, 7:1, 7:13, 7:15, 7:17, 7:19, 7:20, 7:22, 8:1, 8:3, 8:11, 8:16, 8:18, 8:20, 9:9, 9:14, 10:4, 10:12, 10:13, 11:3, 11:21, 11:25, 12:2, 12:5, 12:13, 12:15, 12:19, 12:24, 13:2, 13:4, 13:14, 14:13, 16:12, 16:13, 17:25, 18:20, 19:25, 20:5, 20:16, 21:3, 21:17, 22:1, 22:3, 23:4
**WHITNEY** [1] - 1:6
**Whitney's** [9] - 3:8, 9:3, 11:5, 12:8, 13:6, 13:11, 13:13, 16:3, 19:1
**wholly** [2] - 3:7, 19:20
**Widenbaum** [1] - 5:14
**widow** [1] - 3:9
**wife** [1] - 9:18
**Wiseman** [1] - 9:7
**wish** [1] - 2:9
**wishes** [1] - 24:4
**witnesses** [1] - 19:18
**Woods** [1] - 17:1
**writes** [2] - 6:12, 7:11
**writing** [8] - 13:12, 13:14, 13:21, 14:16, 14:25, 16:6, 17:15, 20:4
**writings** [1] - 15:7
**written** [4] - 4:16, 10:20, 15:5
**wrote** [2] - 5:19, 9:11

---

## X

**XXXX** [1] - 23:8

---

## Y

**year** [1] - 3:21
**yearly** [1] - 6:8
**years** [2] - 11:7, 18:23
**Yokosbosky** [3] - 11:11, 11:17, 18:2